IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1219

Filed: 15 November 2016

Catawba County, No. 12 CVS 2832

BOLIER & COMPANY, LLC and CHRISTIAN G. PLASMAN, Plaintiffs,

v.

DECCA FURNITURE (USA), INC., DECCA CONTRACT FURNITURE, LLC, RICHARD HERBST, WAI THENG TIN, TSANG C. HUNG, DECCA FURNITURE, LTD., DECCA HOSPITALITY FURNISHINGS, LLC, DONGGUAN DECCA FURNITURE CO. LTD., DARREN HUDGINS and DECCA HOME, Defendants,

v.

CHRISTIAN J. PLASMAN a/k/a BARRETT PLASMAN, Third-Party Defendant.

Appeal by plaintiffs and third-party defendant from order entered 26 May 2015 by Judge Louis A. Bledsoe, III in Catawba County Superior Court. Heard in the Court of Appeals 12 May 2016.

> *The Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for plaintiffs-appellants and third-party defendant-appellant.*

> *McGuireWoods LLP, by Robert A. Muckenfuss, Jodie H. Lawson, and Andrew D. Atkins, for defendants-appellees.*

DAVIS, Judge.

Bolier & Company, LLC ("Bolier"), Christian G. Plasman ("Plasman"), and Christian J. Plasman a/k/a Barrett Plasman ("Barrett") (collectively "Plaintiffs") appeal from an order by the trial court enforcing a preliminary injunction previously

entered against them in this action.  After careful review, we dismiss Plaintiffs' appeal.

## Factual Background

Bolier is a closely held North Carolina company in the business of selling furniture.  Bolier was originally founded and owned by Plasman.  On 31 August 2003, Plasman entered into an operating agreement (the "Agreement") with Decca Furniture (USA), Inc. ("Decca USA"), which is a wholly-owned subsidiary of Decca Contract Furniture, LLC ("Decca China").[1]  Pursuant to the Agreement, Plasman conferred a 55% ownership interest in Bolier to Decca USA while retaining a 45% interest for himself.  In return, Decca USA agreed to supply Bolier with furniture for retail sale.

According to Plasman, Richard Herbst, the president of Decca USA, and Tsang C. Hung, the chairman of Decca USA's board of directors, represented to him prior to the execution of the Agreement that while it was necessary for Decca to own a majority ownership interest in Bolier "on paper" due to certain rules of the Hong Kong Stock Exchange, Bolier would, in reality, be operated as a 50/50 partnership between Decca USA and Plasman.  Following the execution of the Agreement, Plasman served as Bolier's president and chief executive officer while his son, Barrett, worked as Bolier's operations manager.  However, this arrangement ended on 19 October 2012

---

[1] In this opinion, we refer at times to Decca USA and Decca China collectively as "Decca" and to Plasman and Barrett collectively as "the Plasmans."

when Herbst terminated the employment of both Plasman and Barrett because Bolier's revenues were no longer sufficient to support their annual salaries.

Although their employment had been terminated, Plasman and Barrett continued to work regularly out of Bolier's offices, ultimately causing Decca USA to change the locks to the company's offices. Plasman and Barrett also opened bank accounts in Bolier's name and diverted approximately $600,000.00 in customer payments intended for Bolier to those accounts. They proceeded to pay themselves at least $62,192.15 from those accounts as salaries, despite the fact that they were no longer employed by Bolier.

On 22 October 2012, Plaintiffs filed the present action (the "Lawsuit") in Catawba County Superior Court alleging claims for dissolution; breach of contract; fraud; constructive fraud; misappropriation of corporate opportunities; trademark, trade dress and copyright infringement; conspiracy to defraud; and unfair trade practices. On 24 October 2012, the Lawsuit was designated as a mandatory complex business case and assigned to the North Carolina Business Court. Decca removed the Lawsuit to the United States District Court for the Western District of North Carolina on 29 October 2012. On that same date, Decca filed a motion for a temporary restraining order and preliminary injunction against the Plasmans pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking, among other things, to prohibit

any additional diversion of Bolier funds and to recover the funds that had already been diverted.

A hearing on Decca's motion was held before the Honorable Richard L. Voorhees. On 27 February 2013, Judge Voorhees entered an order ("Judge Voorhees' Order") granting Decca's motion by entering a preliminary injunction that barred the Plasmans from taking any further actions on Bolier's behalf. Judge Voorhees' Order also directed them to return all diverted funds to Bolier within five business days and to provide an accounting of those funds to Decca USA. The order also put in place various mechanisms to safeguard Plasman's rights as a minority owner of Bolier during the pendency of the litigation.

Plaintiffs filed a document entitled "Plaintiffs' and Third Party Defendant's Response to Court Order" on 6 March 2013. In this document, they represented that they had "fully complied to the best of their ability with the Court Order signed on February 27, 2013." In addition, they stated that "Plaintiffs['] response herein is intended to comply with the spirit of the Court Order, and by complying herein, Plaintiffs are not waiving Plaintiffs' rights to request reconsideration or appeal."

On 13 March 2013, Plaintiffs filed a document captioned "Supplemental Motion for Preliminary Injunction Conditions and Plaintiff Safeguard Conditions" in which they requested that the federal court impose additional obligations on Decca

to protect Plasman's status as a minority owner of Bolier — including the issuance of an injunction bond.

Plaintiffs never made any attempt to appeal Judge Voorhees' Order to the United States Court of Appeals for the Fourth Circuit. Nor did they file a motion for reconsideration of Judge Voorhees' Order.

On 19 September 2014, Judge Voorhees entered an order dismissing Plaintiffs' federal copyright claims and declining to exercise supplemental jurisdiction over Plaintiffs' state law claims. As a result, the Lawsuit was remanded to state court.

Upon remand, Plaintiffs filed in the Business Court a motion entitled "Plaintiffs' Motion to Amend Preliminary Injunction, to Dissolve Portions of the Preliminary Injunction and Award Damages, and Motion for Sanctions." In this document, Plaintiffs asked the court, *inter alia*, to amend various aspects of the preliminary injunction conditions set forth in Judge Voorhees' Order and to dissolve other portions of that order. In support of their motion, Plaintiffs asserted, in part, that

> since the Preliminary Injunction was entered, Plaintiff has obtained significant evidence supporting that [sic] (1) the Preliminary Injunction was improvidently granted, (2) incorrectly entered without protection of an injunction bond, as well as [sic] (3) the facts demonstrate changed circumstances warranting amendment of the Preliminary Injunction.

Plaintiffs then requested the entry of an order containing the following provisions:

> 1. Plasman and Barrett should be awarded at least $574,660.36 in damages relating to improper termination.
>
> 2. Decca USA should be required to pay [a] cash bond of at least $5,471,000.00 and up to $10,000,000.00 to reimburse Bolier relating to Decca's self-dealing, misappropriation of Bolier's corporate opportunities and other tortious conduct.
>
> 3. Decca USA should be required to pay for [an] independent third party audit and accounting of Bolier, Decca Home, Elan by Decca, Decca Contract Furniture, and Decca Hospitality Furnishings to account for all sales of Bolier designs, as well as sales of residential furniture by Decca Home and Elan by Decca.
>
> 4. Sanctions as contemplated by Plaintiffs' Motion for Contempt . . . to defer [sic] similar conduct in the future.

Decca USA filed a document in the Business Court entitled "Defendant Decca USA's Motion to Enforce Order, Motion for Contempt, and Motion for Sanctions." In this motion, Decca USA asserted that the Plasmans had willfully violated Judge Voorhees' Order and, as a result, sought enforcement of the preliminary injunction. Decca USA further requested that the Plasmans be held in contempt and that sanctions be imposed against them.

On 26 March 2015, a hearing on the parties' motions was held before the Honorable Louis A. Bledsoe, III. On 26 May 2015, Judge Bledsoe entered an order

("Judge Bledsoe's Order") denying Plaintiffs' motion and stating, in pertinent part, as

follows:

> The federal court not only found that Chris Plasman had
> interfered with Bolier's business operations by diverting
> Bolier's funds to himself and others but that injunctive
> relief was necessary to ensure management control would
> be exercised by the Majority in Interest as provided under
> the Bolier Operating Agreement. The federal court crafted
> a thoughtful, well-reasoned, and narrowly-tailored
> [Preliminary Injunction] Order that placed managerial and
> operational control in Decca USA, the 55% owner, and
> imposed numerous safeguards to protect Chris Plasman's
> 45% minority interest in the company. This Court has not
> been persuaded, by either evidence or argument, that the
> federal court's carefully drafted [Preliminary Injunction]
> Order should be modified, amended, or dissolved in any
> respect.

With regard to Decca USA's motion, Judge Bledsoe declined to hold the

Plasmans in contempt. However, he granted Decca USA's motion to enforce Judge

Voorhees' Order and ordered that the Plasmans pay Decca USA $62,192.15 plus

applicable interest and provide to Decca USA the accounting that had been required

under Judge Voorhees' Order.[2]

Plaintiffs filed notice of appeal from Judge Bledsoe's Order on 25 June 2015.

On 30 December 2015, Decca filed a motion to dismiss Plaintiffs' appeal.

**Analysis**

---

[2] Judge Bledsoe's Order also ruled on several other motions that had been made by the parties
upon remand of the Lawsuit. However, none of Judge Bledsoe's rulings on those additional motions
are directly relevant to the present appeal.

Decca has moved to dismiss Plaintiffs' appeal on the ground that it is an interlocutory appeal over which this Court lacks appellate jurisdiction. It is clear that this appeal is interlocutory. "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007) (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree." *Heavner v. Heavner*, 73 N.C. App. 331, 332, 326 S.E.2d 78, 80, *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985).

Generally, there is no right of immediate appeal from an interlocutory order. *Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co.*, 228 N.C. App. 314, 317, 745 S.E.2d 69, 72 (2013). The prohibition against interlocutory appeals "prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." *Russell v. State Farm Ins. Co.*, 136 N.C. App. 798, 800, 526 S.E.2d 494, 496 (2000) (citation and brackets omitted).

> However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant

of a substantial right which would be lost absent
immediate review.

*N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995)

(internal citations omitted).

Judge Bledsoe's Order does not contain a certification under Rule 54(b).

Therefore, Plaintiffs' appeal is proper only if Plaintiffs can demonstrate a substantial

right that would be lost absent an immediate appeal.

In order to analyze the question of whether this Court possesses jurisdiction

over this appeal, we must closely examine not only Judge Bledsoe's Order but also

Judge Voorhees' Order and Plaintiffs' filings in response thereto. Judge Voorhees'

Order rejected Plasman's arguments regarding his right to equal control of Bolier but

recognized the need for the imposition of safeguards to protect his rights as a minority

shareholder. The federal court proceeded to enter a preliminary injunction stating,

in pertinent part, as follows:

> The protections afforded by *Meiselman* and its
> progeny developed in light of the generally applicable
> principle of majority rule. Bound by agreement, statute,
> and doctrine, the majority in interest otherwise has the
> right to control corporate affairs. *See, e.g., Gaines v. Long
> Mfg. Co.*, 67 S.E.2d 350, 354 (N.C. 1951) ("The majority has
> the right to control; but when it does so, it occupies a
> fiduciary relation toward the minority, as much so as the
> corporation itself or its officers and directors."); (*see also*
> Doc. 7-2 at 11) (providing that "all decisions or actions of
> the Company . . . or the Members shall require the
> approval, consent, agreement, or vote of the Majority in
> Interest").

Here, the prior conduct of Plaintiff Plasman in continuing to manage and to control the operations of Bolier & Co. has deprived the majority of this right. However, in light of Plaintiffs' claim that Defendants have engaged in self-serving transactions, the imposition of safeguards enabling Plaintiff Plasman to check the threat of self-dealing would be appropriate.

Defendants have proposed the following conditions, among others, to remain in effect pending the resolution of this case:

(1) Plaintiff Plasman is to be enjoined from holding himself out as President or CEO or Bolier & Co.;

(2) Third-Party Defendant Barrett Plasman is to have no further authority as an employee of Bolier & Co.;

(3) The Plasmans are to be prohibited from entering Decca USA or Bolier & Co. property without Decca USA's permission, and upon reasonable request, Decca USA shall grant such permission to Plaintiff Plasman in his role as minority member-manager;

(4) The Plasmans are to be enjoined from removing any property or fixtures from Bolier & Co.'s or Decca USA's premises without the written authorization or permission of Decca USA;

(5) The Plasmans are otherwise enjoined from interfering with Decca USA's or Bolier & Co.'s business operations;

(6) Within five business days of the entry of this Order, the Plasmans are to return to Decca USA's Bank of America lockbox all of Bolier &

Co.'s monies, including but not limited to customer payments, diverted to them or to any bank account under their control, and such funds must be paid with a certified check;

(7) Within five business days of the entry of this Order, the Plasmans are required to provide an accounting to Decca USA, also to be filed with the Court, of all funds that were diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments;

(8) Decca USA shall provide Plaintiff Plasman with copies of Bolier & Co.'s financial statements on a monthly basis;

(9) At Plaintiff Plasman's request, all of Bolier & Co.'s books and records, including royalty and licensing payments, may be inspected and examined once every six months by an accountant of Plaintiff Plasman's choice at his expense at the Decca USA office or at a mutually agreeable location;

(10) Decca USA shall provide Plaintiff Plasman with copies of Bolier & Co.'s federal, state, and local income tax returns for each year beginning with 2012;

(11) Decca USA shall provide Plaintiff Plasman with any other information regarding Bolier & Co.'s affairs as is just and reasonable, or otherwise required by N.C. Gen. Stat. § 57C-3-04 or Bolier & Co.'s Operating Agreement;

(12) A member-manager meeting shall be held bi-annually, in April and October; in which Plaintiff Plasman may provide Bolier & Co. with

>> his input regarding the company's management
>> and affairs; and
>>
>> (13) With regard to these member-manager
>> meetings, Decca USA shall provide Plaintiff
>> Plasman with at least ten days', and no more
>> than fifty days', notice of the date, time, and
>> place of such meetings.

*The Court so orders.*

Judge Voorhees' Order further provided that "[a]dditional conditions may be imposed upon subsequent motion of Plaintiff Plasman, to be filed with the Court within fourteen days of the date on which this Order is filed."

Seven days after Judge Voorhees' Order was entered, Plaintiffs filed a "Response to Court Order," which stated, in pertinent part, as follows: "Plaintiffs['] response herein is intended to comply with the spirit of the Court Order, and by complying herein, Plaintiffs are not waiving Plaintiffs' rights to request reconsideration or appeal." In this document, after expressing concerns with several provisions of Judge Voorhees' Order, Plaintiffs stated that "[a]s set forth herein, Plaintiffs have fully complied to the best of their ability with the Court Order signed on February 27, 2013."

Seven days later, Plaintiffs filed a "Supplemental Motion for Preliminary Injunction Conditions and Plaintiff Safeguard Conditions" in which they sought the entry of "an order establishing Preliminary Injunction conditions to safeguard Plaintiffs Chris Plasman and Bolier & Company, LLC pending final resolution of the

merits." Plaintiffs listed eleven specific requests for such safeguards. In this document, Plaintiffs also requested that the federal court "clarify the . . . [Preliminary Injunction] Order to specifically permit [the Plasmans] to retain funds paid to Chris Plasman and Barrett Plasman for wages earned and Bolier . . . expenses paid (including the $12,000.00 paid as reimbursement for legal expenses) prior to January 14, 2013 shall [sic] not be paid to Decca USA pending final outcome of the litigation[.]"

The federal court never issued an order directly responding to Plaintiffs' motion. Instead, on 19 September 2014 the federal court dismissed Plaintiffs' federal claims and remanded the Lawsuit to state court.

In ruling on Decca's motion to enforce Judge Voorhees' Order, Judge Bledsoe stated the following in his 26 May 2015 order:

> [T]he evidentiary record before the federal court in entering the [Preliminary Injunction] Order included copies of each of eleven checks made payable to the Plasmans in the total amount of $62,192.15, and the federal court was advised that these checks were purportedly for payment of the Plasmans' wages, expenses, and attorney's fees incurred between their termination on October 19, 2012 and when they were finally locked out of Bolier on January 14, 2013. . . .
>
> {33} Based on these facts, the Court concludes that the federal court intended that the Funds at Issue paid from the Bolier accounts to the Plasmans to constitute funds covered by paragraph 6 of the [Preliminary Injunction] Order, and therefore, that the federal court ordered that these funds be returned to "Decca USA's Bank of America lockbox" within five days of the entry of the [Preliminary Injunction] Order. The Court further concludes that the

federal court required the Plasmans, within the same five-day time period, to provide an accounting to Decca USA of "all funds that were diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments," . . . and rejected any contentions by the Plasmans that they were unable to provide the requested information. As a result, the Court concludes that Defendant Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions should be granted, in part, to require the Plasmans to pay to Decca USA the Funds at Issue in the amount of at least $62,192.15, plus interest at the legal rate from March 6, 2013, and to provide the accounting to Decca USA required under paragraph 7 of the [Preliminary Injunction] Order.

With regard to Plaintiffs' motion to dissolve and amend Judge Voorhees' Order,

Judge Bledsoe ruled as follows:

> {43} Finally, although Plaintiffs argue that Decca USA has mismanaged the company since Chris Plasman was removed as President and CEO, the Court finds that Plaintiffs have failed to offer persuasive or compelling evidence to show that Plaintiffs will suffer irreparable harm if Chris Plasman is not returned to the chief management position at Bolier, that Defendants can no longer show a likelihood of success on the merits, or that equity otherwise demands that the [Preliminary Injunction] Order should be dissolved or amended at this time. To the contrary, the Court is persuaded that the continuation of the [Preliminary Injunction] Order — in particular, management by Decca USA, Bolier's Majority in Interest — will not cause Chris Plasman irreparable harm, is in the best interests of Bolier, and remains necessary to protect Bolier from irreparable harm. The federal court not only found that Chris Plasman had interfered with Bolier's business operations by diverting Bolier's funds to himself and others but that injunctive relief was necessary to ensure management control would

be exercised by the Majority in Interest as provided under the Bolier Operating Agreement. The federal court crafted a thoughtful, well-reasoned, and narrowly-tailored [Preliminary Injunction] Order that placed managerial and operational control in Decca USA, the 55% owner, and imposed numerous safeguards to protect Chris Plasman's 45% minority interest in the company. This Court has not been persuaded, by either evidence or argument, that the federal court's carefully drafted [Preliminary Injunction] Order should be modified, amended, or dissolved in any respect.

(footnote omitted).

Having reviewed the relevant orders and filings by the parties, we conclude that Plaintiffs have failed to establish the existence of appellate jurisdiction over this appeal. Plaintiffs essentially make three arguments as to why appellate jurisdiction exists despite the significant passage of time since the federal preliminary injunction was entered. First, they contend that Judge Voorhees' Order was not immediately appealable because it did not contain a final preliminary injunction. Second, they argue that even if his order would otherwise have been appealable, the documents they filed in response to the order tolled their deadline for taking such an appeal. Third, they assert that even assuming they have lost the opportunity to appeal Judge Voorhees' Order, Judge Bledsoe's Order — which they *have* appealed — deprived them of a substantial right such that it was independently appealable. We address each of these arguments in turn.

First, we conclude that Judge Voorhees' Order was, in fact, appealable. It is well settled that preliminary injunction orders issued by a federal court are immediately appealable. *See Nationsbank Corp. v. Herman*, 174 F.3d 424, 427 (4th Cir.), *cert. denied*, 528 U.S. 1045, 145 L.Ed.2d 481 (1999).

While Plaintiffs do not dispute the appealability of federal preliminary injunctions as a general proposition, they contend that Judge Voorhees' Order was not yet final because it invited Plasman to move for additional safeguards to protect his interest as a minority owner of Bolier. We are unable to agree with this contention.

As shown above, the preliminary injunction contained in Judge Voorhees' Order addressed the basic issues as to which the parties disagreed, including the fundamental question of who was legally entitled to control Bolier. While the federal court granted the Plasmans leave to seek additional procedural safeguards if they so desired, this invitation did not render the preliminary injunction incomplete and, therefore, unappealable.

Second, Plaintiffs contend that their subsequent filings in federal court tolled their deadline for appealing Judge Voorhees' Order. We disagree.

Plaintiffs' "Response to Court Order" was not a motion to reconsider Judge Voorhees' Order. Indeed, they expressly stated therein that "Plaintiffs are not waiving Plaintiffs' rights to request reconsideration or appeal." They further

represented in this document that they had "fully complied to the best of their abilities with [Judge Voorhees' Order]."

Nor was the filing of Plaintiffs' "Supplemental Motion for Preliminary Injunction Conditions and Plaintiff Safeguard Conditions" sufficient to toll their deadline for taking an appeal of Judge Voorhees' Order. The bulk of this document simply contained a request for the imposition of additional "reasonable condition[s] and protections" to safeguard Plasman's rights as a minority shareholder during the pendency of the litigation. The document did not purport to be a motion for reconsideration of Judge Voorhees Order, and we decline Plaintiffs' invitation to treat it as such. Had Plaintiffs intended to seek reconsideration of Judge Voorhees' Order so as to toll their deadline for appealing the preliminary injunction, they were required to file a motion that unambiguously sought such relief. However, they failed to do so. While Plaintiffs may have held out hope that the federal court would nevertheless modify its preliminary injunction as a result of their motion, it was still incumbent upon them to protect their appeal rights during the interim by taking an appeal of Judge Voorhees' Order to the Fourth Circuit within the thirty-day deadline provided by Rule 4 of the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 4(a)(1)(A).

Finally, we reject Plaintiffs' argument that Judge Bledsoe's Order was independently appealable. The specific aspects of Judge Bledsoe's Order cited by

Plaintiffs as depriving them of a substantial right are essentially identical to the preliminary injunction terms contained in Judge Voorhees' Order, which Plaintiffs never appealed. Thus, because Judge Bledsoe's Order merely *enforces* the preliminary injunction entered by Judge Voorhees, our consideration of the substantive issues raised by Plaintiffs in the present appeal would enable them to achieve a "back door" appeal of Judge Voorhees' Order well over three years after its entry.

While Plaintiffs point in particular to the portion of Judge Bledsoe's Order directing them to pay to Decca USA $62,192.15 plus interest, they ignore the fact that Judge Bledsoe was simply enforcing the ruling in Judge Voorhees' Order ordering them to return to Decca USA all of the funds that the Plasmans had diverted from Bolier.[3] Indeed, as referenced above, Judge Bledsoe's Order carefully explained how it arrived at the $62,192.15 figure, which was based on the total of eleven checks made payable to the Plasmans purporting to represent payments for their wages, expenses, and attorneys' fees incurred between the date of their termination on 19 October 2012 and the date "they were finally locked out of Bolier on January 14, 2013."

---

[3] We note that while Judge Voorhees' Order directed Plaintiffs to return this money to Decca USA within five business days of the entry of the order, over three and a half years have elapsed, and Plaintiffs are still attempting to avoid this directive.

As Judge Bledsoe's Order noted, the record before the federal court at the time Judge Voorhees' Order was entered contained copies of these eleven checks. Therefore, rather than imposing a new directive requiring the payment of money by the Plasmans to Bolier, Judge Bledsoe's Order simply quantified the amount of money that the federal court had ordered Plaintiffs to pay Decca USA in light of the documents that the parties had put before the federal court *at the time the preliminary injunction was entered*.

Nor did Judge Bledsoe's Order make any substantive modifications to the issue of Bolier's management. Instead, Judge Bledsoe's Order merely reiterated the federal court's rulings on this subject.

> The federal court not only found that Chris Plasman had interfered with Bolier's business operations by diverting Bolier's funds to himself and others but that injunctive relief was necessary to ensure management control would be exercised by the Majority in Interest as provided under the Bolier Operating Agreement. The federal court crafted a thoughtful, well-reasoned, and narrowly-tailored [Preliminary Injunction] Order that placed managerial and operational control in Decca USA, the 55% owner, and imposed numerous safeguards to protect Chris Plasman's 45% minority interest in the company. *This Court has not been persuaded, by either evidence or argument, that the federal court's carefully drafted [Preliminary Injunction] Order should be modified, amended, or dissolved in any respect.*

(Emphasis added).

In sum, Judge Bledsoe's Order simply reiterates that Plaintiffs are bound to comply with the federal preliminary injunction that was entered on 27 February 2013. Therefore, because Plaintiffs have failed to satisfy their burden of demonstrating the loss of a substantial right absent immediate appeal of the order, their appeal must be dismissed. *See Robinson v. Gardner*, 167 N.C. App. 763, 769, 606 S.E.2d 449, 453 ("Defendants have not demonstrated the existence of any substantial right that would qualify them for immediate appeal. . . . We, therefore, allow plaintiffs' motions to dismiss the appeals."), *disc. review denied*, 359 N.C. 322, 611 S.E.2d 417, 418 (2005).[4]

## Conclusion

For the reasons stated above, Plaintiffs' appeal is dismissed.

DISMISSED.

Judges DILLON and INMAN concur.

---

[4] We also deny Plaintiffs' alternative request that we reach the merits of their appeal by treating the appeal as a petition for *certiorari*.