IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-777

Filed: 16 May 2017

Catawba County, No. 12 CVS 2832

CHRISTIAN G. PLASMAN, in his individual capacity and derivatively for the benefit of, on behalf of and right of nominal party BOLIER & COMPANY, LLC, Plaintiffs,

v.

DECCA FURNITURE (USA), INC., DECCA CONTRACT FURNITURE, LLC, RICHARD HERBST, WAI THENG TIN, TSANG C. HUNG, DECCA FURNITURE, LTD., DECCA HOSPITALITY FURNISHINGS, LLC, DONGGUAN DECCA FURNITURE CO., LTD., DARREN HUDGINS, DECCA HOME, LLC, and ELAN BY DECCA, LLC, Defendants,

and BOLIER & COMPANY, LLC, Nominal Defendant,

v.

CHRISTIAN J. PLASMAN a/k/a BARRETT PLASMAN, Third-Party Defendant.

Appeal by plaintiffs and third-party defendant from order entered 26 February 2016 by Judge Louis A. Bledsoe, III in Catawba County Superior Court. Heard in the Court of Appeals 21 February 2017.

*Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for plaintiffs-appellants and third-party defendant-appellant.*

*McGuireWoods LLP, by Robert A. Muckenfuss, Jodie H. Lawson, and Andrew D. Atkins, for defendants-appellees.*

ZACHARY, Judge.

This appeal comes to the Court as the result of a bitter corporate dispute that has yet to reach the discovery phase nearly five years after the action was filed. Plaintiff Christian G. Plasman (Plasman) and third-party defendant Christian J. Plasman (Barrett) (collectively with Plasman, the Plasmans) appeal from an order of the North Carolina Business Court[1] holding them in civil contempt of court.

The contempt order was entered after the Plasmans failed to comply with a Business Court order enforcing the terms of a preliminary injunction entered against them in federal court. On appeal, the Plasmans argue that the Business Court lacked jurisdiction to enter the contempt order while their appeal from the order enforcing the injunction was pending in this Court. The Plasmans then make a series of arguments that attack the sufficiency of the contempt order itself. After careful review, we conclude that the Business Court retained jurisdiction to enter the contempt order, and that the order should be affirmed in its entirety.

## I. Background

In April 2002, Plasman formed Bolier & Company, LLC (Bolier), a closely held North Carolina company offering residential furniture designs that were also suited for use in the hospitality industry. Shortly thereafter, Plasman partnered with Decca

---

[1] N.C. Gen. Stat. § 7A-27(a)(3) (2015) provides for direct appeal to the North Carolina Supreme Court from certain interlocutory orders entered by a Business Court Judge in an action designated as a mandatory complex business case on or after 1 October 2014. *See* N.C. Sess. Law 2014-102, § 9 ("Section 1 of this act becomes effective October 1, 2014, and applies to actions designated as mandatory complex business cases on or after that date."). Because this action was designated as a mandatory complex business case before 1 October 2014, the appeal is properly before this Court.

Furniture, Ltd. (Decca China), which manufactured Bolier's furniture lines. Decca China then formed Decca Furniture (USA), Inc. (Decca USA) to own Decca China's interest in Bolier. Richard Herbst (Herbst) was Decca USA's president at all relevant times.

In August 2003, Plasman and Herbst executed an operating agreement that granted Decca USA a 55% majority ownership interest in Bolier, and that allowed Plasman to retain a 45% minority ownership interest for himself. The operating agreement also vested Decca USA with the authority to make all employment decisions related to Bolier. In November 2003, Plasman entered into an employment agreement with Bolier, which provided that Plasman could be terminated without cause. Plasman executed the employment agreement on his own behalf, and Herbst signed on behalf of Decca USA and Bolier. Thereafter, Plasman served as President and CEO of Bolier, and his son, Barrett, worked as Bolier's operations manager.

According to defendants, despite the significant investments of Decca USA and Decca China in Bolier's operations, they sustained losses in excess of $2 million between 2003 and 2012. As a result, Decca USA terminated the employment of Plasman and Barrett on 19 October 2012. The Plasmans, however, refused to accept their terminations and continued to work out of Bolier's office space. During this time, the Plasmans set up a new bank account in Bolier's name, and they diverted approximately $600,000.00 in Bolier customer payments to that account. From these

diverted funds, the Plasmans paid themselves, respectively, approximately $33,170.49 and $17,021.66 in salaries and personal expenses. Plasman also wrote himself a $12,000.00 check, dated 5 December 2012, from the new account for "Bolier Legal Fees." Decca USA eventually changed the locks to Bolier's offices.

On 22 October 2012, the Plasmans filed the instant action in Catawba County Superior Court alleging claims for, *inter alia*, corporate dissolution, breach of contract, fraud, constructive fraud, and trademark as well as copyright infringement. Two days later, the action was designated as a mandatory complex business case and assigned to the North Carolina Business Court. After removing the case to the United States District Court for the Western District of North Carolina, Decca USA moved Judge Richard L. Voorhees for a preliminary injunction against the Plasmans. On 27 February 2013, Judge Voorhees entered an order (the injunction) that enjoined the Plasmans from acting on Bolier's behalf in any manner. Judge Voorhees further ordered the Plasmans to return all diverted funds to Bolier within five business days, and to provide Decca USA with an accounting of those funds. Judge Voorhees did not require Decca USA to post a security bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, but the injunction did contain various terms that were meant to protect Plasman's rights as a minority owner of Bolier while the litigation continued.

One week after the injunction was entered, the Plasmans filed their "Response to Court Order" in federal court, which challenged certain provisions of the injunction

and stated that "Plaintiffs have fully complied to the best of their ability with the Court Order signed on February 27, 2013." Shortly thereafter, the Plasmans filed another motion that sought to have the federal court provide additional safeguards protecting "Plaintiffs Chris Plasman and Bolier . . . pending final resolution of the merits." This motion also sought to "clarify the . . . [injunction] . . . to specifically permit [the Plasmans] to retain funds paid to Chris Plasman and Barrett Plasman for wages earned and Bolier . . . expenses paid (including the $12,000.00 paid as reimbursement for legal expenses) prior to January 14, 2013[.]" Although Judge Vorhees never ruled on these motions, the Plasmans neither appealed the injunction nor properly sought to have it reconsidered.

The action was remanded to the North Carolina Business Court in September 2014 when Judge Voorhees dismissed the Plasmans' federal copyright claims and declined to exercise supplemental jurisdiction over the state law claims that remained. Upon remand, the parties filed competing motions for consideration by Judge Louis A. Bledsoe, III. In a document entitled "Plaintiffs Motion to Amend Preliminary Injunction, to Dissolve Portions of the Preliminary Injunction and Award Damages, and Motion for Sanctions[,]" the Plasmans moved Judge Bledsoe to, *inter alia*, amend and dissolve certain portions of the injunction. In contrast, Decca USA sought to enforce the injunction's terms. Contending that the Plasmans were in willful violation of the injunction, Decca USA moved Judge Bledsoe to hold the Plasmans in civil

contempt and to impose sanctions against them. After conducting a hearing on the parties' motions, Judge Bledsoe entered an order on 26 May 2015 (the 26 May Order) denying the Plasmans' motion, and reasoning that because the preliminary injunction was carefully crafted and narrowly tailored, it should not be "modified, amended, or dissolved in any respect."[2] Although Judge Bledsoe declined to hold the Plasmans in contempt, he did grant Decca USA's motion to enforce the injunction's requirements. To that end, the Plasmans were ordered to pay Decca USA $62,191.15 plus interest and to provide the accounting required by the injunction.

On 25 June 2015, the Plasmans filed notice of appeal from the 26 May Order. Defendants later filed with this Court a motion to dismiss the Plasmans' appeal, arguing that the 26 May Order was not immediately appealable because it was an interlocutory order that did not affect a substantial right of the Plasmans.

In July 2015, the Business Court, *sua sponte*, directed the parties to "submit short briefs advising the Court whether this case may proceed with further pleadings and discovery, and to a determination on the merits, or whether this case must be stayed pending resolution" of the Plasmans' interlocutory appeal from the 26 May Order. The case was temporarily stayed to allow for the parties' submissions. On 22 September 2015, while the Plasmans' appeal was pending in this Court, defendants

---

[2] We also note that, pursuant to the 26 May Order, Judge Bledsoe dismissed claims that were purportedly brought directly in Bolier's name. Judge Bledsoe found that, as a 45% owner of Bolier, Plasman was "not authorized to bring direct claims in Bolier's name, and must instead bring such claims, if at all, as derivative claims on Bolier's behalf as one of its members."

filed a motion in the Business Court seeking to have the Plasmans held in contempt for failure to comply with the 26 May Order.

In October 2015, Judge Bledsoe entered an order that reflected his consideration of a stay pending appeal. Relying in part on this Court's decision in *RPR & Assocs., Inc. v. Univ. of N. Carolina-Chapel Hill*, 153 N.C. App. 342, 344, 570 S.E.2d 510, 512 (2002), *cert. denied and disc. review denied*, 357 N.C. 166, 579 S.E.2d 882 (2003), Judge Bledsoe determined that he had the authority to determine whether the 26 May Order was immediately appealable. Exercising that authority, Judge Bledsoe found that "no substantial right of the Plasmans was affected by the May 26 Order" because it "simply ordered [the Plasmans] to comply with the never-appealed, legally valid and binding, 2013 [Injunction] Order requiring [the Plasmans] to return money that the Federal Court found they had diverted from Bolier." Consequently, Judge Bledsoe dissolved the temporary stay that he had entered in July 2015, and determined that the "action [would] proceed in th[e Business] Court during the pendency of the Plasmans' appeal unless otherwise ordered by the Court[.]"

After holding a show cause hearing on defendants' contempt motion, Judge Bledsoe entered an order on 26 February 2016 (the Contempt Order) concluding that the Plasmans were in civil contempt of court because of their willful noncompliance with the 26 May Order. The Contempt Order contained a finding that repeated Judge Bledsoe's previous determination that "the appeal of the May 26 Order was

interlocutory, did not affect a substantial right, and . . . did not stay the case." The Plasmans filed notice of appeal from the Contempt Order on 24 March 2016.

Roughly eight months later, in November 2016, this Court filed an opinion that dismissed the Plasmans' interlocutory appeal from the 26 May Order. *See Bolier & Co., LLC v. Decca Furniture (USA), Inc.*, __ N.C. App. __, 792 S.E.2d 865 (2016) (*Bolier I*). This Court reached three conclusions in support of its holding that the Plasmans had failed to demonstrate the loss of a substantial right absent immediate review of the 26 May Order:

> First, we conclude that Judge Voorhees' Order was, in fact, appealable. It is well settled that preliminary injunction orders issued by a federal court are immediately appealable. . . .
>
> Second, Plaintiffs contend that their subsequent filings in federal court tolled their deadline for appealing Judge Voorhees' Order. We disagree. . . .
>
> Had Plaintiffs intended to seek reconsideration of Judge Voorhees' Order so as to toll their deadline for appealing the preliminary injunction, they were required to file a motion that unambiguously sought such relief. However, they failed to do so. While Plaintiffs may have held out hope that the federal court would nevertheless modify its preliminary injunction as a result of their motion, it was still incumbent upon them to protect their appeal rights during the interim by taking an appeal of Judge Voorhees' Order to the Fourth Circuit within the thirty-day deadline provided by Rule 4 of the Federal Rules of Appellate Procedure. . . .
>
> Finally, we reject Plaintiffs' argument that [the 26 May] Order was independently appealable. The specific aspects of [the 26 May] Order cited by Plaintiffs as depriving them

> of a substantial right are essentially identical to the
> preliminary injunction terms contained in Judge Voorhees'
> Order, which Plaintiffs never appealed. Thus, because
> Judge Bledsoe's Order merely enforces the preliminary
> injunction entered by Judge Voorhees, our consideration of
> the substantive issues raised by Plaintiffs in the present
> appeal would enable them to achieve a "back door" appeal
> of Judge Voorhees' Order well over three years after its
> entry.

*Id.* at __, 792 S.E.2d at 872 (internal citations omitted). In sum, the *Bolier I* Court determined that the 26 May Order "simply reiterate[d] that [the Plasmans were] . . . bound to comply with the federal preliminary injunction that was entered on 27 February 2013." *Id.* at __, 792 S.E.2d at 873.

The Plasmans now appeal from the Contempt Order.

## II. Trial Court's Jurisdiction To Enter The Contempt Order

As an initial matter, we address the Plasmans' argument that their appeal from the 26 May Order stayed all proceedings in the Business Court and left the trial court without jurisdiction to enter the Contempt Order.

Under North Carolina law, the longstanding general rule is that an appeal divests the trial court of jurisdiction over a case until the appellate court returns its mandate. *E.g.*, *Bowen v. Hodge Motor Co.*, 292 N.C. 633, 635, 234 S.E.2d 748, 749 (1977); *Upton v. Upton*, 14 N.C. App. 107, 109, 187 S.E.2d 387, 388 (1972). Our legislature has codified this rule at N.C. Gen. Stat. § 1-294 (2015), which provides that:

> When an appeal is perfected as provided by this Article it
> stays all further proceedings in the court below upon the

judgment appealed from, or upon the matter embraced therein, unless otherwise provided by the Rules of Appellate Procedure;[3] but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from. . . .

Pending the appeal, the trial judge is *functus officio*, *Bowen*, 292 N.C. at 635, 234 S.E.2d at 749, which is defined as being "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." Black's Law Dictionary 743 (9th ed. 2009).

For over a century, the Supreme Court has recognized that an appeal operates as a stay of all proceedings at the trial level as to issues that are embraced by the order appealed. *E.g.*, *Bohannon v. Virginia Trust Co.*, 198 N.C. 702, 153 S.E. 263 (1930); *Pruett v. Charlotte Power Co.*, 167 N.C. 598, 83 S.E. 830 (1914). This is section 1-294 in a nutshell, for the statute itself draws a distinction between trial court's inability to rule on matters that are inseparable from the pending appeal and the court's ability to proceed on matters that are "not affected" by the pending appeal. *See* N.C. Gen. Stat. § 1-294 (2015). This jurisdictional issue often arises in the context of interlocutory orders.

In *Veazey v. Durham*, our State's high court examined the question of the circumstances under which the appeal of an interlocutory order operates as a stay of the proceedings in the trial court. 231 N.C. 357, 57 S.E.2d 377 (1950). Speaking

---

[3] The Supreme Court has yet to create exceptions to the general rule codified at section 1-294.

through Justice Ervin, the Supreme Court drew a clear distinction between the effect

of immediately appealable and nonappealable interlocutory orders on a trial court's

continuing jurisdiction:

> When a litigant takes an appeal to the Supreme Court from an appealable interlocutory order of the Superior Court and perfects such appeal in conformity to law, the appeal operates as a stay of all proceedings in the Superior Court relating to the issues included therein until the matters are determined in the Supreme Court. G.S. Sec. 1-294. . . .
>
> But this sound principle is not controlling upon the record in the case at bar. . . .
>
> There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders. The rules regulating appeals from the Superior Court to the Supreme Court are designed to forestall the useless delay inseparable from unlimited fragmentary appeals, and to enable courts to perform their real function, i.e., to administer 'right and justice * * * without sale, denial, or delay.' N.C. Const. Art. I, Sec. 35.
>
> This being true, *a litigant cannot deprive* the Superior Court of jurisdiction to try and determine a case on its merits *by taking an appeal* to the Supreme Court *from a nonappealable interlocutory* order of the Superior Court. A contrary decision would necessarily require an acceptance of the paradoxical paralogism that a party to an action can paralyze the administration of justice in the Superior Court by the simple expedient of doing what the law does not allow him to do, i.e., taking an appeal from an order which is not appealable. . . .
>
> [W]hen an appeal is taken to the Supreme Court from an interlocutory order of the Superior Court which is not

- 11 -

> subject to appeal, the Superior Court need not stay proceedings, but may disregard the appeal and proceed to try the action while the appeal on the interlocutory matter is in the Supreme Court.

*Id.* at 363-64, 57 S.E.2d at 382-83 (emphasis added and internal citations omitted).

Justice Ervin then carefully reiterated that *an improper interlocutory appeal never deprives a trial court of jurisdiction over a case*:

> We close this opinion with an admonition given by this Court to the trial bench three-quarters of a century ago: "But certainly when an appeal is taken as in this case from an interlocutory order from which no appeal is allowed by The Code, which is not upon any matter of law and which affects no substantial right of the parties, it is the duty of the Judge to proceed as if no such appeal had been taken."

*Id.* at 367, 57 S.E.2d at 385 (quoting *Carleton v. Byers*, 71 N.C. 331, 335 (1874)).

There is no doubt that the 26 May Order was interlocutory. Ordinarily, "there is no right of immediate appeal from interlocutory orders and judgments." *Travco Hotels, Inc. v. Piedmont Nat. Gas Co.*, 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992) (citation omitted). However, an interlocutory order is subject to immediate review[4] when it "affects a substantial right that 'will clearly be lost or irremediably adversely affected if the order is not review[ed] before final judgment.' " *Edmondson v. Macclesfield L-P Gas Co.*, 182 N.C. App. 381, 391, 642 S.E.2d 265, 272 (2007) (quoting

---

[4] Immediate review of interlocutory orders is also available when the trial court certifies, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, that there is no just reason to delay appeal of its order or judgment. *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999).

*Blackwelder v. Dept. of Human Res.*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983)); *see* N.C. Gen. Stat. § 1-277(a) (2015) ("An appeal may be taken from every judicial order or determination of a [trial] judge . . . which affects a substantial right claimed in any action or proceeding[.]"); N.C. Gen. Stat. § 7A-27(b)(3) (2015) (providing a right of appeal from any interlocutory order that, *inter alia*, affects a substantial right).

"Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury to [the appellant] if not corrected before appeal from final judgment." *Goldston v. Am Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). Our Supreme Court has adopted the dictionary definition of "substantial right": " 'a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right.' " *Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (quoting Webster's Third New International Dictionary 2280 (1971)). Even so, "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

Apart from the muddy waters of the substantial right test, there is also the issue of what authority a trial court possesses to rule on the interlocutory nature of an appeal. *Veazy* states that the "[trial c]ourt need not stay proceedings, but may *disregard* the appeal and proceed to try the action *while the appeal on the interlocutory matter* is in the Supreme Court." 231 N.C. at 364, 57 S.E.2d at 383 (emphasis added). Before an interlocutory appeal is properly "disregarded" and the action proceeds, a substantial right analysis must be conducted at the trial level during the pendency of the appeal. To that end, a line of cases from this Court establishes that a trial judge is authorized to determine if an attempted appeal is of a nonappealable interlocutory order[5] and to decide whether the trial court has jurisdiction to proceed once an appeal has been noticed. *See, e.g.*, *T&T Dev. Co. v. S. Nat. Bank of S.C.,* 125 N.C. App. 600, 603, 481 S.E.2d 347, 349 (1997) ("[B]ecause plaintiffs had no right to appeal the granting of the motion *in limine*, the trial court was not deprived of jurisdiction and did not err in calling the case for trial."); *Velez v. Dick Keffer Pontiac GMC Truck, Inc.*, 144 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001) (recognizing that "a litigant cannot deprive the trial court of jurisdiction to determine a case on its merits by appealing from a nonappealable interlocutory order of the trial court").

---

[5] This inquiry is not always straightforward, as the appealability of a particular type of order may not be well established. Whether or not an interlocutory order is immediately appealable will ultimately be decided in the appellate division, but the cases that follow focus on the trial court's decision to continue to exercise jurisdiction over a case during the pendency of an appeal.

In *RPR & Assocs.*, this Court established the parameters of the authority of the trial court in making this determination, stating:

> Because the trial court had the authority to determine whether its order affected defendant's substantial rights or was otherwise immediately appealable, the trial court did not err in continuing to exercise jurisdiction over this case after defendant filed its notice of appeal. The trial court's determination that the order was nonappealable was reasonable in light of established precedent and the repeated denials by the appellate courts of this State to stay proceedings. Although this Court ultimately held that defendant's appeal affected a substantial right, it also held that defendant was not immune to suit. Defendant states no grounds, nor has it produced any evidence to demonstrate how it was prejudiced by the trial court's exercise of jurisdiction over this case.

153 N.C. App. at 349, 570 S.E.2d at 515. With the decision in *RPR & Assocs.*, the concepts of reasonableness and prejudice are injected into the appellate court's analysis.

This Court recently applied *RPR & Assocs.*' analytical framework in the context of a civil contempt order. *See SED Holdings, LLC v. 3 Star Properties, LLC*, __ N.C. App. __, 791 S.E.2d 914 (2016). In *SED Holdings*, the plaintiff secured an injunction that prohibited the defendants from selling or disposing of certain pools of residential mortgage loans. *Id.* at __, 791 S.E.2d at 917. The defendants appealed the injunction. *Id.* This Court determined that the interlocutory appeal affected a substantial right, but ultimately affirmed the injunction. *SED Holdings, LLC v. 3 Star Properties, LLC*, __ N.C. App. __, __, __, 784 S.E.2d 627, 630, 632 (2016) ("*SED I*").

While the appeal in *SED I* was pending, the defendants failed to comply with the injunction, prompting the trial court to hold a series of contempt proceedings. *SED Holdings*, __ N.C. App. at __, 791 S.E.2d at 917. In a show cause order, the trial court specifically "concluded . . . that: (1) the injunction did not affect a substantial right of defendants and was thus not immediately appealable, and (2) the trial court retained jurisdiction to enforce the terms of its injunction while defendants' appeal was pending in [the] Court [of Appeals]." *Id.* at __, 791 S.E.2d at 918. Before the decision in *SED I* was filed, the trial court entered an order holding the defendants in civil contempt. *Id.* On appeal to this Court, the defendants argued that the contempt order was a nullity, as their appeal from the injunction in *SED I* divested the trial court of jurisdiction to hold contempt proceedings on the defendants' willful noncompliance with the injunction's terms. *Id.*

In rejecting the defendants' argument, this Court recognized that

> [a]t the very least, *RPR & Assocs.* stands for two general propositions: (1) a trial court properly retains jurisdiction over a case if it acts reasonably in determining that an interlocutory order is not immediately appealable, and (2) that determination may be considered reasonable even if the appellate court ultimately holds that the challenged order is subject to immediate review.

*Id.* at __, 791 S.E.2d at 920. The *SED Holdings* Court then reasoned as follows:

> It is clear that injunctive orders entered only to maintain the status quo pending trial are not immediately appealable. Then again, reasonable minds may disagree as to whether a particular injunction simply maintains the

- 16 -

status quo. Beyond that, our courts have taken a flexible approach with respect to the appealability of orders granting injunctive relief. Most relevant to this case, orders affecting a party's ability to conduct business or control its assets may or may not implicate a substantial right. . . .

Because the injunctive relief was designed to maintain the status quo, and given that established precedent regarding the appealability of such orders is equivocal, the trial court reasonably concluded that its injunction was not immediately appealable. While this Court eventually held in *SED I* that defendants' appeal affected a substantial right, that decision was not dispositive of whether the trial court acted reasonably in determining that the appeal had not divested it of jurisdiction. *RPR & Assocs.*, 153 N.C. App. at 348, 570 S.E.2d at 514. As such, the trial court was not *functus officio*. This Court also held that the trial court's ruling on SED's motion for injunctive relief was not erroneous. Defendants therefore cannot demonstrate how they were "prejudiced by the trial court's [decision to continue to] exercise . . . jurisdiction over this case" by enforcing its injunction. *Id.* Accordingly, pursuant to the principles announced in *RPR & Assocs.*, we conclude that the trial court retained jurisdiction to enter orders related to the contempt proceedings in this case while defendants' interlocutory appeal was pending in this Court.

*Id.* at __, 791 S.E.2d at 921-22 (internal citations omitted).

Applying the principles of *Veazy* as well as the analytical framework established in *RPR & Assocs.* and reaffirmed in *SED Holdings* to the present case, we conclude that Judge Bledsoe properly retained jurisdiction to enter the Contempt Order while the Plasmans' appeal from the 26 May Order was pending in this Court. After the Plasmans noted their appeal from the 26 May Order, Judge Bledsoe, *sua sponte*, addressed the issue of whether the Business Court's jurisdiction was stayed pending

the appeal. Upon careful consideration of the parties' briefs and arguments on this issue, Judge Bledsoe unequivocally concluded that the 26 May Order did not affect any substantial right of the Plasmans. According to Judge Bledsoe, the 26 May Order was not immediately appealable because it "simply ordered [the Plasmans] to comply with the never-appealed" injunction order. Judge Bledsoe reiterated this conclusion in the Contempt Order.

This Court agreed with Judge Bledsoe's analysis, and specifically refused to allow the Plasmans to mount a collateral attack on the injunction via the 26 May Order that was entered to enforce it. *See Bolier I*, __ N.C. App. at __, 792 S.E.2d at 872. Consequently, unlike in *SED Holdings*, it is irrelevant whether the injunction at issue maintained the status quo or went further. The May 26 Order, which was the subject of the contempt proceedings, was not an injunction; it was an enforcement mechanism. Given the procedural context of this case, and the Business Court's careful attention to the effect (or lack thereof) of the Plasmans' appeal from the 26 May Order on its jurisdiction, Judge Bledsoe's decision to proceed with the case was proper and reasonable. So too was Judge Bledsoe's determination that the Plasmans' pending interlocutory appeal did not deprive him of jurisdiction to enforce the 26 May Order. Furthermore, the Plasmans have not, and cannot, demonstrate that they were prejudiced by Judge Bledsoe's decision to enforce an order that directed the Plasmans to comply with a prior, never-appealed injunction.

Nevertheless, the Plasmans argue that this Court's recent decision in *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, __ N.C. App. __, 794 S.E.2d 535 (2016) should control our analysis. In *Tetra Tech*, after not getting paid for its work on construction projects at Fort Bragg, the plaintiff sued the defendant-general contractor and the trial court later entered an injunction that required the general contractor "to segregate funds related to the construction projects and not to pay those funds out without court approval." *Id.* at __, 794 S.E.2d at 537. The defendant moved the trial court, pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure, to modify the injunction. *Id.* Although the trial court refused to modify the injunction in the manner requested by the defendant, the court did modify the injunction's terms. *Id.* The defendant filed notice of appeal from the denial of its motion to modify and from the underlying injunction "on the ground that the time to appeal that order was 'tolled' by its motion to modify, which purportedly was filed under Rules 59 and 60." *Id.* at __, 794 S.E.2d at 538. Roughly two months later, the trial court "issued orders holding [the defendant] in contempt for violating the preliminary injunction and dismissing [the defendant's] counterclaims with prejudice as a sanction." *Id.* The defendant also appealed from those orders. *Id.*

On appeal, this Court concluded that it lacked jurisdiction to review the defendant's "appeal from the preliminary injunction order because [it] did not appeal that order within thirty days and its motion to modify the preliminary injunction

order, purportedly brought under Rules 59 and 60 of the Rules of Civil Procedure, did not toll the time to appeal." *Id.* at __, 794 S.E.2d at 540. However, the *Tetra Tech* Court went on to conclude that the trial court's denial of the defendant's motion to modify the injunction affected a substantial right and was immediately appealable, and that the trial court's denial of the defendant's requested modifications to the injunction did not constitute an abuse of discretion. *Id.* Finally, the *Tetra Tech* Court vacated the contempt and sanctions orders because the defendant's appeal from the denial of its motion to modify the injunction divested the trial court's jurisdiction over the matter. *Id.* at __, 794 S.E.2d at 541.

In holding that "the trial court lacked jurisdiction to conduct a contempt proceeding and impose sanctions[,]" *id.*, the *Tetra Tech* Court relied on *Joyner v. Joyner*, 256 N.C. 588, 124 S.E.2d 724 (1962), in which our Supreme Court addressed an order for alimony *pendente lite* and child custody and held that the order was not enforceable by contempt while the order was on appeal. The *Tetra Tech* Court then distinguished its holding from the decision in *SED Holdings* as follows:

> This Court recently held that there is an exception to the *Joyner* rule: "a trial court properly retains jurisdiction over a case if it acts reasonably in determining that an interlocutory order is not immediately appealable." *SED Holdings, LLC v. 3 Star Prop., LLC*, __ N.C. App. __, __, 791 S.E.2d 914, 920 (2016). The analysis in *SED Holdings* turned on the fact that the injunction at issue merely maintained the status quo. That is not the case here. This injunction was a mandatory one; it forced a business to segregate its funds, imposed controls on the business's

> operations, and forced the business to conduct an accounting and provide the results of that accounting to the opposing party. Thus, when [the defendant] appealed the denial of its motion to modify that injunction, the trial court was divested of jurisdiction to enforce it.

*Tetra Tech*, __ N.C. App at __ n.3, 794 S.E.2d at 541 n.3.

Despite the Plasmans' argument to the contrary, *Tetra Tech* is easily distinguished from the present case. To begin, the decision in *Joyner*—the only case upon which the *Tetra Tech* Court relied in vacating the contempt order at issue—was rendered upon the "general rule . . . that a duly perfected appeal or writ of error divests the trial court of further jurisdiction of the cause in which the appeal has been taken." *Joyner*, 256 N.C. at 591, 124 S.E.2d at 726. The *Joyner* Court, unlike Judge Bledsoe, apparently had no reason to address the effect of an appeal of a nonappealable interlocutory order on a trial court's jurisdiction. In addition, *Tetra Tech* involved an appeal from the denial of a motion to modify an injunction that imposed substantial restrictions on the defendant's ability to conduct its business and required the defendant to provide extensive accountings to the plaintiff. Here, the underlying injunction simply restored the status quo by requiring the Plasmans to provide an accounting of the *diverted* funds, and to return *those funds* to Decca USA's (or Bolier's) corporate coffers. Finally, this case involves a trial court's decision to enforce the terms of an interlocutory order after citing *RPR Assocs.* and making a specific determination that the order was not immediately appealable, whereas *Tetra Tech*

involved no such determination. Indeed, the *Tetra Tech* Court may have reached a different decision on the contempt order at issue had it not determined that the defendant's motion to modify was not immediately appealable.

Because the decisions in *Veazy*, *RPR Assocs.*, and *SED Holdings* control our analysis, we conclude that the Plasmans' appeal from the 26 May Order, which Judge Bledsoe and this Court determined was not immediately appealable, did not divest the Business Court of jurisdiction over the case. As a result, Judge Bledsoe was not *functus officio* when the Plasmans noted their appeal from the 26 May Order, and the Contempt Order was properly entered. *See Onslow Cty. v. Moore*, 129 N.C. App. 376, 387-88, 499 S.E.2d 780, 788 (1998) (rejecting a party's argument that, under *Joyner*, "the appeal of an underlying judgment stays contempt proceedings until the validity of the judgment is determined[,]"` and concluding that "[b]ecause the order issuing the injunction was interlocutory and no substantial right of [the party] was affected by the denial of immediate appellate review, the trial court was not divested of jurisdiction and could therefore properly hold [him] in contempt for violating the injunction").

### III. Scope Of The Plasmans' Appeal

Because the Plasmans purport to raise eight issues on appeal, we must determine whether all of those issues are properly before us. The "Issues Presented" section of the Plasmans' principal brief lists the following issues for our consideration:

I. Whether The Trial Court Erred In Considering An Appealed Order And Finding Plasman In Contempt Of An Appealed Order?

II. Whether The Trial Court Erred In Finding That The Purpose Of The Preliminary Injunction Order Is Still Served By Requiring Payment Of Money To Decca USA?

III. Whether The Trial Court Erred By Finding Failure To Pay Money To Defendants After Proper Appeal Amounts To Willful, Bad Faith Non-Compliance?

IV. Whether The Trial Court Erred By Finding That Appellants Diverted Bolier's Money And Directing That Decca USA Be Paid?

V. Whether The Trial Court Erred By Failing To Find That The Federal Court Did Not Issue Required Rule 65 Security, And Failing To Find That Decca USA Has Continuously Deprived Plasman Of Statutorily Protected Member-Manager Rights?

VI. Whether The Trial Court Erred By Failing To Find That Decca USA Failed To Perform Material Terms Of The Preliminary Injunction Thereby Rendering The Injunction Unenforceable?

VII. Whether The Trial Court Erred In Requiring The Appellants To Pay Interest While Appellants Waited On Clarification Of The Court's Order?

VIII. Whether The Trial Court Erred In Considering Jointly Titled Assets And IRAs Exempt From Collection To Determine Appellants Ability To Comply With Order?

(All Caps Omitted).

Issue I has already been addressed and resolved in Section II above. After a careful review of the Plasmans' principal brief, we conclude that Issues IV, V, and VII

- 23 -

have not been properly argued or presented. As a result, those arguments are deemed abandoned. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Issues II, III, VI, and VIII have been specifically argued on appeal, and each issue is addressed below.

## IV. Discussion of the Contempt Order's Merits

### A. *Appellate Jurisdiction*

The Contempt Order is interlocutory, as it did not resolve all matters before the trial court in this case. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") (citation omitted). As noted above, interlocutory orders are generally not appealable unless certified by the trial court pursuant to Rule 54(b) or unless a substantial right of the appellant would be lost or jeopardized absent immediate review. *See, e.g.*, *Larsen v. Black Diamond French Truffles, Inc.*, __ N.C. App. __, __, 772 S.E.2d 93, 95 (2015). "The appeal of any contempt order . . . affects a substantial right and is therefore immediately appealable." *Guerrier v. Guerrier*, 155 N.C. App. 154, 158, 574 S.E.2d 69, 71 (2002) (citing *Willis v. Power Co.*, 291 N.C. 19, 30, 229 S.E.2d 191, 198 (1976)). Accordingly, the Plasmans' appeal of the Contempt Order is properly before this Court.

## B. *Standard of Review and Generally Applicable Law*

"In contempt proceedings[,] the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978)(citation omitted). Our review of a contempt order, therefore, "is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Middleton v. Middleton*, 159 N.C. App. 224, 226, 583 S.E.2d 48, 49 (2003) (citations and internal quotation marks omitted).

N.C. Gen. Stat. § 5A-21(a) (2015) provides:

> Failure to comply with an order of a court is a continuing civil contempt as long as:
>
> (1) The order remains in force;
>
> (2) The purpose of the order may still be served by compliance with the order;
>
> (2a) The noncompliance by the person to whom the order is directed is willful; and
>
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

Civil contempt is designed to coerce compliance with a court order. *Adkins v. Adkins*, 82 N.C. App. 289, 293, 346 S.E.2d 220, 222 (1986).

### C. *Whether The Order's Purpose May Be Served By Compliance*

The Plasmans argue that the purpose of the 26 May Order can no longer be served by requiring them to return to Decca USA the funds they diverted from Bolier after their terminations took effect. In making this argument, the Plasmans assert that the 26 May Order "erroneously and impermissibly awarded damages, not a fine permitted by contempt[.]" The Plasmans also contend that the payment of money was not necessary to avoid irreparable harm to Decca USA, i.e., "[t]here is no evidence that [Decca] USA needed [the] purported . . . 'diverted money' to preserve [its] majority control of Bolier." These arguments are wholly lacking in merit.

Whether the issuance of the injunction was necessary to avoid irreparable harm to Decca USA was an issue ripe for Judge Voorhees' consideration in federal court. *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (recognizing that "parties seeking preliminary injunctions [must] demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest"). But the 26 May Order is not an injunction; it is an order entered to *enforce* an injunction. In the Contempt Order, Judge Bledsoe specifically found "that the purpose of the May 26 Order to enforce the Federal Court [Injunction] Order's directive that the Plasmans return the diverted funds to Decca USA [] may still be served by compliance with the Order." This finding was in harmony with this Court's conclusion in *Bolier I* that

Judge Bledsoe entered the 26 May Order "simply [to] enforc[e] the ruling in Judge Voorhees' Order ordering [the Plasmans] to return to Decca USA all of the funds that the Plasmans had diverted from Bolier." *Bolier I*, __ N.C. App. at __, 792 S.E.2d at 872. Our review of the record reveals that the Plasmans have yet to return the diverted funds. We need say little more than that the purpose of the 26 May Order— to enforce compliance with the injunction's terms, including the requirement that funds diverted from Bolier's bank accounts be returned to Decca USA—could still be served by compliance with the 26 May Order. To address the Plasmans' arguments any further would permit them to mount an impermissible collateral attack on the underlying injunction. We refuse, as did the *Bolier I* Court, to "enable [the Plasmans] to achieve a 'back door' appeal of Judge Voorhees' Order well over three years after its entry." *Id.* at __, 792 S.E.2d at 872.

### D. *Willful Noncompliance*

The Plasmans next argue that Judge Bledsoe erroneously found that their noncompliance with the 26 May Order was willfill. Curiously, the Plasmans assert that the time frame in which they could appeal the injunction was tolled by the subsequent motions for modification and clarification, a contention that the *Bolier I* Court squarely rejected. *See Bolier I*, __ N.C. App. at __, 792 S.E.2d at 872. Beyond that, the Plasmans argue that they acted in good faith and pursuant to "proper legal process," and that the trial court lacked jurisdiction to enter any ruling—including the

Contempt Order—once notice of appeal from the 26 May Order was given. According to the Plasmans, their "understanding that [the appeal] divested the trial court of jurisdiction to continue contempt proceedings necessarily prevented [them] from being found in willful, bad faith disobedience." We disagree.

As an initial matter, we have already concluded above that the trial court *did* have jurisdiction to enter the Contempt Order. Furthermore, the record supports Judge Bledsoe's finding that the Plasmans were in willfill noncompliance of the 26 May Order at the time the Contempt Order was entered.

" 'Willful' has been defined as disobedience which imports knowledge and a stubborn resistance, and as something more than an intention to do a thing. It implies doing the act purposely and deliberately, indicating a purpose to do it, without authority—careless whether [the contemnor] has the right or not—in violation of law[.]" *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996) (citation and other internal quotations marks omitted). The term willfulness "involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983) (citations omitted). Consequently, "[w]illfulness in a contempt action requires either a positive action (a 'purposeful and deliberate act') in violation of a court order or a stubborn refusal to obey a court order (acting 'with knowledge and stubborn resistance')." *Hancock*, 122 N.C. App. at 525, 471 S.E.2d at 419 (citation omitted).

In the present case, Judge Bledsoe made the following findings:

{17} . . . In the P.I. Order, the Federal Court first ordered the Plasmans to return to Decca USA's Bank of America lockbox all of Bolier & Co.'s monies, including but not limited to customer payments, diverted to them. . . . This requirement arose out of the Plasmans' purported removal of Bolier funds from Decca USA accounts between the date of their employment termination on October 19, 2012 and the date when they were finally locked out of Bolier's premises on January 14, 2013. The Plasmans used these funds to pay their purported wages, expenses, and attorney's fees after their employment was terminated.

{18} The Plasmans did not return the funds as ordered by the Federal Court, and after the matter was remanded to this Court, the Court, in its May 26 Order, granted Decca USA's Motion to Enforce [the Federal Court's P.I.] Order . . . .

{19} The Plasmans have not yet returned to Decca USA the diverted funds. The Plasmans never appealed the Federal Court P.I. Order and only filed a response to [the] Court Order seeking clarification as to the order to repay diverted funds. The Federal Court did not respond to the Plasmans' Response prior to remand. On June 25, 2015, the Plasmans filed a Notice of Appeal of this Court's May 26 Order, including the portions of the Order enforcing the Federal Court P.I. Order's requirement that the Plasmans return the diverted funds.

{20} This Court subsequently concluded that because the May 26 Order "simply ordered [the] Plasmans to comply with the never-appealed, legally valid and binding, 2013 P.I. Order," the appeal of the May 26 Order was interlocutory, did not affect a substantial right, and therefore did not stay the case. . . .

{21} After this Court concluded that the case was not stayed, the Plasmans continued not to comply with the May 26

Order and again filed a motion to clarify this Court's holding. The Court again affirmed its conclusion that the appeal of the May 26 Order did not stay the case or affect a substantial right. . . . The Plasmans have continued to refuse to comply with the May 26 Order's directive to return the diverted funds.

{22} After the Court issued the Show Cause Order, the Plasmans, rather than complying with the Show Cause Order's instruction to submit evidence for *in camera* review or making a good faith effort to seek clarification, submitted, only minutes before the filing deadline, a document entitled Objections to Show Cause Production, Notice of Conditional Intent to Comply with Show Cause, and Request for Clarification ("Request"). The Court found that filing to be "procedurally improper, substantively without merit, and completely baseless as a purported excuse [not] to comply with the clear terms of the Court's Show Cause Order. . . ."

{23} While the May 26 Order found that the Plasmans' response to the Federal Court's P.I. Order reflected "a genuine dispute (or at least the Plasmans' genuine confusion) concerning [their obligations]," . . . *the Court finds that the Plasmans' belabored and continuing refusal to return the diverted funds in the face of this Court's repeated directives to do so reflects "knowledge and stubborn resistance" to the May 26 Order. The Court also finds that the Plasmans have acted with a "bad faith disregard for authority and the law" by improperly seeking to reargue the merits of the May 26 Order in this Court and the Court's conclusion that the matter is not stayed pending appeal. The Court therefore finds that the Plasmans are in willful noncompliance of the May 26 Order.*

(Emphasis added and internal citations omitted).

As summarized above, the Plasmans did not comply with the injunction's terms.

Although the 26 May Order enforced the injunction and identified the exact amount

of funds to be returned—$62,192.15 plus applicable interest—the Plasmans repeatedly filed motions in the Business Court that sought clarification of what was already clear: they were required to return the diverted funds to Decca USA. The Plasmans also stubbornly refused to accept Judge Bledsoe's conclusions that the appeal from the 26 May Order did not divest the Business Court's jurisdiction over the case, and that the trial level proceedings would not be stayed. The record is replete with instances in which the Plasmans acted with "knowledge" of and "stubborn resistance" to the 26 May Order's clear directives. *Hancock*, 122 N.C. App. at 525, 471 S.E.2d at 419. Accordingly, Judge Bledsoe's finding that the Plasmans were in willful noncompliance with that order is supported by competent evidence.

### E. *Decca USA's Purported Noncompliance with the Injunction and 26 May Order*

The Plasmans also argue that the injunction and the 26 May Order are no longer enforceable because Decca USA has refused to comply with both orders' requirement that the Plasmans be provided with certain information concerning Bolier's operations. We disagree.

In making this argument, the Plasmans simply complain about relief they have not obtained from Judge Bledsoe regarding disputes outside the scope of this appeal. According to the Plasmans, "Judge Bledsoe has repeatedly failed to find that [Decca USA] has not provided [Chris] Plasman with the information or access to Bolier. To

the contrary, Judge Bledsoe has repeatedly stayed discovery, refused to compel [Decca USA] to provide information." The Plasmans also argue that the Business Court was required to "issue [an] adequate [Rule 65] security bond" before the injunction could be enforced.

The gravamen of these contentions is that the 26 May Order lacked essential findings and was erroneous. Even assuming that Judge Bledsoe should have made certain findings concerning Decca USA's compliance with the injunction, those findings would be immaterial to a determination of whether the Plasmans had complied with *their own* obligations under the injunction. Furthermore, "[a]n erroneous order is one 'rendered according to the course and practice of the court, but contrary to law, or upon a mistaken view of the law, or upon an erroneous application of legal principles.' " *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 676, 360 S.E.2d 772, 777 (1987) (citation omitted). "An erroneous order may be remedied by appeal; it may not be attacked collaterally." *Id.* (citation omitted). This Court has already dismissed the Plasmans appeal in *Bolier I*. Thus, regardless of whether the 26 May Order was properly issued or not, it could not simply be ignored by the Plasmans. Even if Decca USA has not complied with its responsibilities under the injunction (as enforced by the 26 May Order), the Plasmans' obligation to return the diverted funds remains in place. Accordingly, this argument is without merit.

### F. *The Plasmans' Ability To Comply With The 26 May Order*

Finally, the Plasmans argue that Judge Bledsoe improperly considered their jointly-held bank accounts and their individually-held investment retirement accounts (IRAs) in assessing the Plasmans' present ability to comply with the 26 May Order. Once again, we disagree.

"In determining a contemnor's present ability to pay, the appellate courts of this state have directed trial courts to 'take an inventory of the property of the plaintiff; find what are his assets and liabilities and his ability to pay and work—an inventory of his financial condition.' " *Gordon v. Gordon*, 233 N.C. App. 477, 484, 757 S.E.2d 351, 356 (2014) (quoting *Bennett v. Bennett*, 21 N.C. App. 390, 393-94, 204 S.E.2d 554, 556 (1974)). "Considering how a contemnor pays his expenses is an important part of this analysis." *Id.* "The majority of cases have held that to satisfy the 'present ability' test defendant must possess some amount of cash, or asset readily converted to cash." *McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985). However, "[t]he standard is not having property free and clear of any liens, but rather that one has the present means to comply with the court order and hence to purge oneself of the contempt." *Adkins*, 82 N.C. App. at 291, 346 S.E.2d at 222. "Reasonable measures may well include liquidating equity in encumbered assets." *Id.* at 291-92, 346 S.E.2d at 222.

The Plasmans rely exclusively on *Spears v. Spears*, __ N.C. App. __, 784 S.E.2d 485 (2016) to argue that jointly-titled assets—here, joint checking and savings

accounts—cannot be used to determine a party's ability to comply with a contempt order. In *Spears*, this Court vacated a contempt order because, *inter alia*, the trial court faulted the defendant-husband "for failing to force his second wife to sell their beach house despite the fact that defendant testified that they owned the house as tenants by the entirety." *Id.* at __, 784 S.E.2d at 496. However, the *Spears* Court simply recognized the statutory rule that a husband cannot not force his wife to sell, lease, transfer, or otherwise liquidate certain real property when that property is held as a tenancy by the entireties. *Id.* (citing N.C. Gen. Stat. § 39-13.6(a) (2013) ("Neither spouse may bargain, sell, lease, mortgage, transfer, convey or in any manner encumber any property so held without the written joinder of the other spouse.")).

*Spears* has no application here, for the protections afforded real property held by spouses as tenants by the entirety do not apply in this instance. Therefore, the jointly-held bank accounts at issue were properly considered in Judge Bledsoe's evaluation of the Plasmans' ability to comply.

We reach the same conclusion concerning the individual IRAs held by the Plasmans. Indeed, this Court has previously held that a trial court properly considered funds in a defendant's retirement account in determining that the defendant had the present ability to pay alimony arrears and purge himself of civil contempt. *Tucker v. Tucker*, 197 N.C. App. 592, 597, 679 S.E.2d 141, 144 (2009) ("Thus, the trial court properly considered the assets that defendant had available at

the time of the hearing to satisfy the $10,000.00 payment towards the alimony arrears and specifically based its conclusion regarding defendant's ability to pay upon the fact that defendant had available, *inter alia*, $6,200.00 from his 401K account and a $2,000.00 cashier's check, which together would comprise $8,200.00 of the $10,000.00."). Accordingly, Judge Bledsoe's inventory of the Plasmans' financial condition properly took account of their jointly-held bank accounts and their individual IRAs, and it was not error to consider these assets when assessing the Plasmans' present ability to comply with the 26 May Order and return the diverted funds to Bolier.

## V. Conclusion

For the reasons stated above, we conclude that the trial court had jurisdiction to hold the Plasmans in civil contempt, and that the Contempt Order should be affirmed in its entirety.

AFFIRMED.

Judges BRYANT and INMAN concur.