RACHEL DARLENE TUCKER, Plaintiff v. JEWETT EUGENE TUCKER, JR., Defendant

No. COA08-789

(Filed 16 June 2009)

**Contempt— civil—failure to make alimony payments—current ability to pay**

The trial court did not err in a civil contempt case arising out of the failure to make alimony payments by concluding defendant had the current ability to pay $10,000 as a purge payment because: (1) the trial court properly considered the assets that defendant had available at the time of the hearing to satisfy the $10,000 payment towards the alimony arrears and specifically based its conclusion regarding defendant's ability to pay upon the fact that defendant had $6,200 from his 401K account and a $2,000 cashier's check, which together would comprise $8,200 of the $10,000; (2) the court also noted two of defendant's assets could be readily converted to cash including a boat and a 2001 Ford Explorer; and (3) defendant failed to assign error to any of the findings of fact regarding his 401K money, the cashier's check, his boat, and motor vehicle, and thus these findings are deemed binding on appeal.

Appeal by defendant from order entered on or about 7 November 2007 by Judge Scott C. Etheridge in District Court, Moore County. Heard in the Court of Appeals 28 January 2009.

*Staton, Doster, Post Silverman & Foushee, P.A., by Jonathan Silverman, for defendant-appellant.*

*Arthur M. Blue Law Office, P.A., by Arthur M. Blue, for plaintiff-appellee.*

**TUCKER v. TUCKER**

[197 N.C. App. 592 (2009)]

STROUD, Judge.

The trial court found defendant to be in civil contempt of court due to a failure to make court ordered alimony payments and ordered defendant's incarceration until payment of a $10,000.00 purge payment. Defendant appeals, arguing the trial court erred in concluding that he had the present ability to pay a $10,000.00 purge payment towards his alimony arrearages. For the following reasons, we affirm.

I. Background

On or about 24 March 1998, plaintiff and defendant entered into a settlement agreement for divorce in Georgia. On or about 15 June 1998, plaintiff and defendant were divorced and defendant was ordered by the State of Georgia to pay $1,500 a month in alimony. On or about 22 August 2006, the Georgia alimony order was registered in North Carolina against defendant, with $14,750.00 of alimony in arrears. On or about 15 September 2006, defendant objected to the registration of the Georgia order in North Carolina. On or about 13 March 2007, defendant withdrew his objection based upon an agreement by plaintiff to wait 60 days before taking enforcement action.

On or about 5 June 2007, plaintiff filed a verified motion asking that the trial court find defendant to be in civil contempt and requesting that defendant be ordered to pay her costs and attorney fees for prosecution of the motion. On or about 8 June 2007, the trial court found probable cause that defendant was in contempt, ordered defendant to show cause why he should not be held in civil contempt, and set a hearing regarding the show cause order for 25 June 2007. The contempt hearing was held on 26 June 2007.

At the hearing, the parties stipulated that the alimony arrears owed by defendant as of 30 June 2007 were $42,650.00. After the hearing, the trial court orally found defendant to be in civil contempt and ordered that he be held in the Moore County jail until he paid $10,000.00 towards his alimony arrears. On 27 June 2007, defendant paid the $10,000.00 purge payment, and the trial court entered an order directing defendant's release from custody as he had purged himself of contempt by his payment. On or about 7 November 2007, the trial court entered its written civil contempt order from the 26 June 2007 hearing. From the contempt order, defendant appeals. Defendant contends that the trial court committed reversible error by concluding that he had the current ability to pay $10,000.00. Defendant "requests that the trial Court's civil contempt order be

vacated and this matter be remanded for a new hearing." For the following reasons, we affirm.

## II. Ability to Pay $10,000.00

Defendant contends that "there was insufficient evidence to support the trial court's findings of fact, conclusions of law and order that . . . [defendant] had the present means and ability to pay an alimony arrearage and therefore was in civil contempt of court." (Original in all caps.) We disagree.

> Review in [civil] contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.

*Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990) (citations and quotation marks omitted), *aff'd per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991). However, "[f]indings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal." *Pascoe v. Pascoe*, 183 N.C. App. 648, 650, 645 S.E.2d 156, 157 (2007) (citations and quotation marks omitted). "The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*." *State v. Simon*, 185 N.C. App. 247, 250, 648 S.E.2d 853, 855 (citation and quotation marks omitted), *disc. review denied*, 361 N.C. 702, 653 S.E.2d 158 (2007). "A show cause order in a civil contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official shifts the burden of proof to the defendant to show why he should not be held in contempt." *State v. Coleman,* 188 N.C. App. 144, 149-50, 655 S.E.2d 450, 453 (2008) (citations omitted); *see also Hartsell* at 387, 393 S.E.2d at 575 ("In civil contempt the defendant has the burden of presenting evidence to show that he was not in contempt and the defendant refuses to present such evidence at his own peril.").

Defendant does not challenge the trial court's conclusion that he is in civil contempt for failure to pay his alimony, but only claims that the trial court did not properly determine that he had the ability to pay the $10,000.00 purge payment. There is no question as to defendant's liability to pay alimony generally or the amount of arrears owed because defendant stipulated to these facts. Defendant also does not argue in his brief that the Court erred in finding that he had the abil-

ity to pay alimony. Defendant's argument is limited to the trial court's finding that he had the ability to pay a $10,000.00 payment toward his arrearages to purge himself of contempt.

If a trial court orders imprisonment for civil contempt, the court must also state how the defendant may purge himself of contempt and find that the defendant has the ability to do so.

General Statute 5A-21 provides that a person may not be imprisoned for civil contempt unless the person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable him to comply with the order. General Statute 5A-22 provides that the order of a court holding a person in contempt must specify how the person may purge himself of the contempt. Because these statutes relate to the same subject matter, they must be construed *in pari materia*. When so construed, these statutes require that a person have the present ability to comply with the conditions for purging the contempt before that person may be imprisoned for civil contempt.

. . . .

To justify conditioning defendant's release from jail for civil contempt upon payment of a large lump sum of arrearages, the district court must find as fact that defendant has the present ability to pay those arrearages. The majority of cases have held that to satisfy the present ability test defendant must possess some amount of cash, or asset readily converted to cash.

*McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985) (citations, quotation marks, and brackets omitted).

Here, the trial court found the following facts which were not challenged by defendant:

5. . . . Defendant has a long history of employment dating back to 1980 when he received certification to perform ultra-sounds. In 1980 the Defendant began employment with Tift General Hospital in Georgia. Thereafter he worked for approximately one and [a] half years with Shared Medical doing rotational work for various doctor's office[s]. Thereafter, the Defendant set up his own diagnostic practice where he worked for approximately 23 years. For approximately 3 years the Defendant worked interpreting ultra-sounds in Perry, Georgia. In 2002 the Defendant moved to

Moore County, North Carolina and accepted a position with FirstHealth Moore Regional Hospital where he remained from April 1, 2002 until approximately June 1, 2007.

6. That the Defendant lives in a residence in Seven Lakes, North Carolina. That the house is subject to homeowner's dues which were paid on his behalf. The Defendant enjoys the facilities including the lake and plays golf at least two times a week and enjoys various functions available to members of the association.

7. In 2005, the Defendant took a Carribean cruise on Celebrity Cruise Line.

. . . .

9. That the defendant earned approximately $78,000.00 last year and his income has been approximately $72,000.00 from FirstHealth for several years.

10. That the Defendant owns an 18 foot boat, 2001 Ford Explorer, furniture located in the home consisting of at least a leather couch, a leather chair, a rocking chair, a queen size bed in the master bedroom, a chest of drawers, a bedroom suit in the daugther's bedroom, a full size bed night stand and chest in the guest room, a set of MacGregor golf clubs. In addition, the Defendant has a credit card/debit card furnished for his use, it is in the name of his spouse/fiancé. The Defendant testified that he has access to use the card as desired. The Court does note that we are presently unaware of the limits of the credit extended by the card and the limit of use by the Defendant. Within weeks of this hearing the Defendant cashed in his 401K plan and did not pay any alimony. The Defendant received approximately $6,200.00 net from the liquidation of the account. The Defendant paid bills and the loan secured by his truck. However he failed to produce any documentation or receipts indicating that he paid any of these bills.

. . . .

12. The court finds that he was fired from his job at Moore Regional Hospital due to his failure to follow Moore Regional Hospital policies and is unemployed at the time of this hearing. He stated he had a job interview set for June 28, 2007.

. . . .

16. The Court finds that [sic] all testimony of the Defendant to be less than credible.

. . . .

19. That the Defendant has in Court a $2,000.00 cashier's check he testified was a loan from his mother. However, as of the trial, the Defendant had failed to give the $2,000.00 to the Plaintiff.

The trial court also made a conclusion of law that "[d]efendant has the ability to comply with the alimony order when considering the above facts and in particular that he has a $2,000.00 cashiers check, a boat, a 2001 Ford Explorer, and at least $6,200.00 from his 401K plan." Thus, the trial court properly considered the assets that defendant had available at the time of the hearing to satisfy the $10,000.00 payment towards the alimony arrears and specifically based its conclusion regarding defendant's ability to pay upon the fact that defendant had available, *inter alia*, $6,200.00 from his 401K account and a $2,000.00 cashier's check, which together would comprise $8,200.00 of the $10,000.00. The court also noted two of defendant's assets which could be "readily converted to cash[,]" *id.*, the boat and the 2001 Ford Explorer.

Defendant has assigned error to the conclusion of law quoted above regarding his present ability to pay, but defendant did not assign error to any of the findings of fact upon which it is based; i.e., defendant does not challenge the findings that he had a $2,000.00 cashiers check, a boat, a Ford Explorer, or $6,200.00 from his 401K plan. Defendant did testify at trial that he had already spent the $6,200.00, but he failed to assign error to the trial court's finding that he did not produce documentation as to his payment of bills with the $6,200.00 or the finding that his testimony was "less than credible." As defendant failed to assign error to *any* of the findings of fact regarding his 401K money, the cashier's check, his boat, and motor vehicle, these findings are deemed binding on appeal; *Pascoe* at 650, 645 S.E.2d at 157, and thus the trial court's conclusion regarding defendant's ability to pay was supported by the findings of fact. We therefore conclude the uncontested facts support the conclusion that "[d]efendant has the present means and ability to comply with the order or is able to take reasonable measures that would enable him to comply with the order by paying $10,000.00[.]"

**IN RE D.S.**

[197 N.C. App. 598 (2009)]

III. Conclusion

We affirm the trial court order requiring defendant to pay $10,000.00 towards alimony arrears as a purge payment for civil contempt of court.

AFFIRMED.

Judges CALABRIA and ELMORE concur.