NO. COA13-937

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STEVEN G. GORDON,
     Plaintiff,

v.                                    Guilford County
                                      No.  09 CVD 10832
DEBORAH J. GORDON,
     Defendant.


Appeal by plaintiff from Order entered on or about 24 April 2013 by Judge Jan H. Samet in District Court, Guilford County. Heard in the Court of Appeals 6 February 2014.

> *Randolph M. James, PC, by Randolph M. James, for plaintiff-appellant.*
>
> *Woodruff Law Firm, P.A., by Jessica Snowberger Bullock, for defendant-appellee.*


STROUD, Judge.


Steven Gordon ("plaintiff") appeals from an order entered on or about 24 April 2013 finding him to be in civil contempt and ordering him jailed unless he pays $20,000 to his former wife, Deborah Gordon ("defendant"), within 60 days. We affirm.

I.   Background

Much of the background to this case was discussed in our opinion arising from the last contempt order that plaintiff appealed:

> The parties were married in 1983 and separated in 2007. On 21 August 2009, the parties executed a mediated settlement agreement, pursuant to which Plaintiff was required to pay Defendant a distributive award in the amount of $1,200,000.00 and to pay $5,600.00 per month in post-separation support until $1,000,000.00 of the distributive award had been paid. In return, Defendant agreed to waive the right to receive additional post-separation support or alimony.
>
> On 24 August 2009, Plaintiff filed a complaint for divorce. On 28 October 2009, Defendant filed an answer in which she admitted the material facts alleged in Plaintiff's complaint and asserted counterclaims for, among other things, divorce, distribution of the parties' IRA accounts, breach of contract, specific performance of the mediated settlement agreement, and attorney's fees. In a reply filed on 13 November 2009, Plaintiff admitted that he had not made all the payments required by the mediated settlement agreement and asserted various defenses stemming from his alleged inability to obtain a bank loan or otherwise procure the funds needed to make the required payments.
>
> On 5 May 2010, the trial court entered a consent order which provided, in pertinent part, that:
>
> . . . .

Plaintiff shall pay to Defendant on the first day of each month beginning June 1, 2010 the sum of $9000, by direct deposit to her checking account until the earlier to occur of the following:

(i) July 31, 2011 or

(ii) The sale of 8640 Adkins Road, Colfax, NC

. . . .

On 12 April 2012, the trial court orally determined that Plaintiff was in contempt of the consent judgment by willfully failing to list the Adkins Road property for sale with Ms. Laney; stated that Defendant had chosen, instead, to list the property with an "inexperienced" agent who "doesn't even come close to having the qualities, the skills necessary, the connections necessary to sell this price of a house;" and noted that, in the court's "opinion [, Plaintiff] really [wasn't] trying to satisfy this obligation" because he did not "believe that [he] should have to pay [Defendant any more] money." As a result, the trial court told Plaintiff that he was being held in contempt of court for willfully failing to list the property with Ms. Laney and that, in the event that he failed to execute a listing contract with her within fourteen days, he would be jailed pending compliance with the relevant provision of the consent judgment.

*Gordon v. Gordon*, ___ N.C. App. ___, 746 S.E.2d 21, 2013 WL 3049072 at *1-*3 (2013) (unpublished) (brackets and ellipses omitted), *disc. rev. denied*, ___ N.C. ___, 753 S.E.2d 679

(2014). Defendant appealed the 2012 contempt order to this Court. *Id.* at \*4. We affirmed. *Id.* at \*13.

Since the 2012 order, there have been additional conflicts between the parties over the money plaintiff owes defendant. After November 2012, plaintiff failed to pay the $5,000 per month that had been ordered by the trial court. As a result, defendant filed a motion for contempt. The trial court issued an order to show cause, finding that there was probable cause to believe plaintiff was in contempt of the 2010 Consent Order. Plaintiff responded, claiming that he was unable to make the required payments.

The trial court held a hearing on defendant's contempt motion on 26 February 2013. By order entered 24 April 2013, the trial court made written findings of fact and conclusions of law. The trial court held plaintiff in civil contempt and ordered that he be jailed if he failed to pay $20,000 in arrearages within 60 days "until such time as he complies with this order." Plaintiff filed notice of appeal to this Court on 30 April 2013.

## II. Civil Contempt

Plaintiff argues on appeal that the trial court erred in holding him in contempt because it failed to find that he has the

present ability to pay the $20,000 he concedes that he owes. We disagree.

A.   Standard of Review and Burden of Proof

> Review in civil contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment. However, findings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal. The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*. A show cause order in a civil contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official shifts the burden of proof to the defendant to show why he should not be held in contempt.

*Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 142-43 (2009) (citations, quotation marks, and brackets omitted). Here, there was a show cause order with a judicial finding of probable cause.  Therefore, the burden was on plaintiff "to show why he should not be held in contempt." *Id.* at 594, 679 S.E.2d at 143.

B.   Present Ability to Pay

The trial court found plaintiff to be in civil contempt and ordered him to pay $20,000 in arrearages within 60 days or be sent to jail. Plaintiff argues that there was no finding and no evidence that he was presently able to comply or take reasonable steps to purge his contempt and that therefore he could not be subjected to an indefinite term in jail for civil contempt.

> For civil contempt to be applicable, the defendant must be able to comply with the order or take reasonable measures that would enable him to comply with the order. We hold this means he must have the present ability to comply, or the present ability to take reasonable measures that would enable him to comply, with the order.

*Jones v. Jones*, 62 N.C. App. 748, 749, 303 S.E.2d 583, 584 (1983); *see also* N.C. Gen. Stat. § 5A-21(a)(3) (2013). "Reasonable measures" to pay an outstanding judgment could include "borrowing the money, selling defendant's . . . property . . . , or liquidating other assets, in order to pay the arrearage." *Teachey v. Teachey*, 46 N.C. App. 332, 335, 264 S.E.2d 786, 787-88 (1980).

> When a defendant has the present means to comply with a court order and deliberately refuses to comply, there is a present and continuing contempt and the court may commit such defendant to jail for an indefinite term, that is, until he complies with the order. Under such circumstances, however, there must be a specific finding of fact supported by competent evidence to the

effect that such defendant possesses the means to comply with the court order. Our Supreme Court has indicated . . . that the court below should take an inventory of the property of the plaintiff; find what are his assets and liabilities and his ability to pay and work—an inventory of his financial condition—so that there will be convincing evidence that the failure to pay is deliberate and wilful.

*Bennett v. Bennett*, 21 N.C. App. 390, 393-94, 204 S.E.2d 554, 556 (1974).

First, we must address plaintiff's argument that the trial court failed to find that he has the present ability to comply with its order. The trial court specifically found that

17. The evidence before the Court establishes conclusively that Plaintiff had the present ability to pay the $5,000 monthly alimony for the months of November and December of 2012 and January and February of 2013.

18. During the relevant period, Plaintiff had available to him from his business for his personal use at least $20,000 in cash used for the purchase of vehicles used as leased vehicles. He also had available at least $20,000 available to pay alimony through cash advances available through lines of credit associated with credit cards. Evidence also shows that Plaintiff had as much as $16,000 in business cash used to pay mortgage payments for his relatives' mortgages or rents.

The trial court then concluded that "Plaintiff *had* the present ability to comply with the May 5, 2010 Consent Order Judgment

directing Plaintiff to pay [the] $5,000 per month alimony payment." (emphasis added.)

Plaintiff contends that the trial court's use of the word "had" rather than the word "has" is fatal to its judgment, as this shows that the Court failed to make findings as to his present ability to pay. Plaintiff claims that although he may have *had* the ability to pay $20,000 at some time in the past prior to the hearing, at the time of the hearing he no longer had such present ability. The hearing was held on 26 February 2013, at which time the trial court took the matter under advisement; the order was entered on 24 April 2013. Plaintiff does not claim that his circumstances changed between date of the February 2013 hearing and entry of the order in April 2013; his argument focuses only on the word "had."

Although we agree that a trial court must make findings as to a contemnor's present ability to pay before holding him in civil contempt, we cannot take the word "had" out of the context of the entire order. Perhaps some of the confusion as to verb tense arises from the fact that at any civil contempt hearing, the parties are presenting evidence of what has happened in the past to prove the present state of affairs to enable the trial court to make findings of fact about what the present

circumstances are and what will likely happen in the future. And then the written order from that hearing is actually prepared and entered after the hearing, so that the trial court is necessarily referring to events that occurred and evidence that was presented in the past, which was the present on the date the events happened or on the date of the hearing. Time stubbornly refuses to stand still even long enough for a hearing to be completed or an order prepared and entered. We must read the findings of fact with these considerations in mind.

The findings in this case are similar to those we approved in *Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 574 (1990). In *Hartsell*, the trial court found that "'defendant had at all times been fully capable and able of complying with all provisions of the Court's decree' and that 'defendant had the present ability and continuing capability to comply with all remaining provisions of the Court's decree with which he had not heretofore complied.'" *Id.* at 385, 393 S.E.2d at 573 (brackets omitted). Despite the trial court's use of the word "had," we affirmed the trial court's conclusion that the defendant's failure to comply was willful and that he had the *present* ability to comply because there was evidence that he had "the

present ability to take reasonable measures that would enable him to comply." *Id.* at 386, 393 S.E.2d at 574.

Taking the findings as a whole, it is clear that the trial court considered plaintiff's ability to comply as of the date of the hearing and within the sixty days afforded to him to take any additional measures he may need to take. The trial court properly took an inventory of plaintiff's recent income and expenses in considering his ability to comply throughout the relevant period, including February 2013, when the hearing was held. *See Bennett*, 21 N.C. App. at 393-94, 204 S.E.2d at 556. It made findings on his various sources of income, how he pays his expenses, and other voluntary expenses he has undertaken to pay rather than paying the judgment. Given the extensive evidence presented and findings made regarding plaintiff's income and expenses, we hold that the trial court's finding on present ability to pay is adequate.

Plaintiff further argues that there was no evidence to support a finding that he had the present ability to pay. Plaintiff claims that the trial court "made no findings regarding cash available to plaintiff as of the hearing or as of the day the Order was entered." This is true, but the trial court also did not order plaintiff to pay immediately on the day

of the hearing nor immediately on the date the order was entered. The trial court gave plaintiff 60 days after entry of the order to acquire the $20,000, and the findings show that plaintiff had various options to accomplish this.

The trial court found that plaintiff's 2012 income was approximately $139,641. Plaintiff earned approximately $15,000 per month in November and December 2012. The trial court also found that "the personal debts of the Plaintiff are paid through the business and $180,000 in personal expenses were paid from October 2011 through October 2012." The trial court found that plaintiff voluntarily pays thousands of dollars in expenses for his adult children and his mother, totaling more than $16,500 over the course of four months. Plaintiff does not challenge any of these findings as unsupported by competent evidence, so they are binding on appeal. *Tucker*, 197 N.C. App. at 594, 679 S.E.2d at 143.

Although plaintiff should have well been able to pay defendant by temporarily ceasing to pay the expenses he had been paying for his adult children and mother, the trial court also made findings regarding his ability to take reasonable measures that would enable him to comply by borrowing the funds. The evidence showed that plaintiff had two credit cards. As of

December 2012, one had a cash advance available of $4,500 and the other had an available cash advance of $4,590. The credit cards also provided plaintiff with available lines of credit in excess of $44,887. Plaintiff does not argue that he expected his income or expenses to change substantially in the foreseeable future. Plaintiff did contend at the hearing that his business, Flash Gordon Motors & Leasing, Inc., was in decline, and of course this was contested by defendant's evidence. In any event, the trial court heard and considered this evidence, weighed its credibility, and made its findings, which did not include a finding that the business was failing. Therefore, it was fully appropriate for the trial court to base its finding of present ability to pay on evidence of income and expenses in the recent past. *See Parsons v. Parsons*, ___ N.C. App. ___, ___, 752 S.E.2d 530, 534 2013 (noting that future expenses "can [generally] only be predicted based on past experience"). This evidence shows that plaintiff could take reasonable steps to pay the full $20,000 he owes by paying a portion of his $15,000 monthly income, taking out cash advances from his credit cards, ceasing to voluntarily pay the expenses of other family members, and/or transferring any expenses in excess of his income to his credit cards for those months.

Plaintiff further challenges the trial court's consideration of his business assets in finding a present ability to comply. He contends that considering business expenditures "would effectively eliminate the corporate identity of any closely-held corporation." Again, we disagree.

In determining a contemnor's present ability to pay, the appellate courts of this state have directed trial courts to "take an inventory of the property of the plaintiff; find what are his assets and liabilities and his ability to pay and work—an inventory of his financial condition." *Bennett*, 21 N.C. App. at 393-94, 204 S.E.2d at 556. Considering how a contemnor pays his expenses is an important part of this analysis.

In *Foy v. Foy*, 69 N.C. App. 213, 316 S.E.2d 315 (1984), we affirmed a trial court's finding of willful noncompliance with an alimony order. In reviewing the trial court's willfulness findings, we considered the defendant's interest in a closely held company as a possible source of funds for the defendant, even though he did not receive any direct income. *Foy*, 69 N.C. App. at 215, 316 S.E.2d at 316-17. Plaintiff's interest in his company is far more clearly established than that of the defendant in *Foy*.

Here, the trial court's findings indicated that plaintiff had a history of using his corporate assets to pay for his personal debts and personal expenses. In fact, the evidence showed that he had used corporate assets to pay $180,000 in personal expenses from October 2011 through October 2012. Plaintiff does not argue that this finding is unsupported by the evidence. These expenditures relate directly to plaintiff's assets and liabilities and to his ability to pay the arrearages. Therefore, the trial court properly considered plaintiff's corporate assets and liabilities and did not impair or disregard his business's corporate identity in any way.

Given this evidence and the findings made by the trial court, we hold that the trial court did not err in concluding that within 60 days plaintiff could take reasonable steps to pay the entire $20,000 of the arrearages between using the cash advances, charging any expenses not covered by the business to one of his credit cards, and ceasing to voluntarily pay thousands of dollars to his other relatives. *See Williford v. Williford*, 56 N.C. App. 610, 612, 289 S.E.2d 907, 909 (1982) ("[P]ayment of alimony may not be avoided merely because the husband has remarried and voluntarily assumed additional obligations." (citation, quotation marks, and ellipses

omitted)); *Teachey*, 46 N.C. App. at 335, 264 S.E.2d at 787-88 (noting that reasonable efforts could include borrowing money and liquidating assets); *Watson v. Watson*, 187 N.C. App. 55, 67, 652 S.E.2d 310, 319 (2007) (affirming a finding of civil contempt where the trial court afforded the defendant 90 days to take reasonable measures to pay the required sum), *disc. rev. denied*, 362 N.C. 373, 662 S.E.2d 551 (2008).

Plaintiff argues that compliance with the order would require him to take on debts he could never hope to pay off, but neither the evidence nor the findings support plaintiff's dim view of his wherewithal. The trial court's uncontested findings show that he earned approximately $15,000 per month in the months preceding the hearing, that plaintiff had the ability to pay thousands of dollars per month to family members, and that his debts and $180,000 of his personal expenses were paid by his business. Drawing money from any of these sources could properly be considered "reasonable measures" to pay off the arrearages. *See Teachey*, 46 N.C. App. at 335, 264 S.E.2d at 787-88.

C. Crediting the amount seized from plaintiff

Plaintiff next contends that the trial court erred in not crediting him with the $7,322.42 seized by defendant from his

checking account. These funds were seized by execution upon a judgment which was entered upon the distributive award of $1,025,000; that judgment is not a subject of this appeal. Plaintiff's argument conveniently ignores the fact that these funds were seized by execution to pay this outstanding judgment, which is separate from his alimony obligation, as well as the 5 May 2010 consent order, which differentiates between the $5,000 per month he is required to pay in alimony and the $1,025,000 distributive award.[1] The 5 May 2010 order specifically states that the "alimony does not reduce the $1,025,000 distributive award."

The 12 April 2012 judgment and order further clarified this distinction. At that time, plaintiff still owed approximately $894,023 toward the distributive award. The trial court continued to require that plaintiff pay $5,000 per month as alimony until the distributive award was paid in full. The trial court specifically stated that the monthly $5,000 payment "is not a credit against the money judgment." It further clarified that "[t]he requirement that Plaintiff Husband make monthly

---

[1] Plaintiff also argues that the $5,000 per month ordered by the trial court in the May 2010 consent order was not actually "alimony." Plaintiff specifically consented to the order which identified this payment as "alimony." He never appealed from that order and cannot now collaterally attack that determination.

payments to Defendant Wife for support and maintenance does not alter, limit, delay, or postpone Defendant Wife's rights to enforce the money judgment and to pursue all collection rights and remedies."[2] As these prior orders make clear, the $7,322 was seized by execution on the judgment entered as to the $1,025,000 distributive award. The $7,322 seized did reduce the amount he owed on the distributive award judgment, and plaintiff does not get to count the amount seized by defendant twice.

### III. Conclusion

Based on plaintiff's repeated, willful disregard of court orders, as found by the trial court, and the trial court's adequate findings regarding plaintiff's present ability to pay $20,000 within 60 days, we conclude that the trial court did not err in holding plaintiff in civil contempt for his willful disregard of the order requiring him to pay $5,000 per month to defendant. We affirm the trial court's order.

AFFIRMED.

Judges CALABRIA and DAVIS concur.

---

[2] Plaintiff did appeal that order and the subsequent June 2012 order holding plaintiff in contempt for willful failure to comply with the 5 May 2010 order. Both orders were affirmed by this Court. *Gordon*, 2013 WL 3049072 at *13. We further rejected plaintiff's characterization of the $5,000 monthly payment as an "alternative penalty." *Id.*