IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-128

Filed: 15 September 2020

Wake County, No. 18 CVD 7871

METLIFE GROUP, INC. O/B/O EMPLOYEES, Petitioner,

v.

DANIEL LEE SCHOLTEN, Respondent.

Appeal by Respondent from order entered 27 June 2019 by Judge Margaret P. Eagles in Wake County District Court. Heard in the Court of Appeals 26 August 2020.

> *Parker Poe Adams & Bernstein LLP, by Melanie Black Dubis and Nana Asante-Smith, for the Petitioner-Appellee.*
>
> *Mary McCullers Reece for the Respondent-Appellant.*

BROOK, Judge.

Daniel Lee Scholten ("Respondent") appeals from an order finding him in civil contempt. We affirm the order of the trial court.

## I. Background

Respondent is a former employee of MetLife Group, Inc. ("Petitioner"). In May of 2017, Respondent sent an e-mail to some of his professional colleagues in which he compared himself to Adam Lanza, the perpetrator of the Sandy Hook Elementary massacre. Like Mr. Lanza, Respondent experiences autism. Petitioner terminated

Respondent's employment shortly after he sent the e-mail comparing himself to Mr. Lanza.

Respondent is also the author of a blog. Substantial portions of the blog are devoted to Respondent's thoughts and feelings about his former workplace and his experience of the circumstances surrounding the termination of his employment, as well as the kinship he feels with Mr. Lanza. The content of the blog includes numerous references that reasonably could be interpreted to suggest Respondent may be a danger to his former colleagues and Petitioner's other employees.

Over a year after his employment by Petitioner was terminated, on 14 June 2018 Respondent entered his former workplace with a GoPro video camera strapped to his chest and confronted several of his former colleagues. During the episode Respondent threatened to publicly disclose the video he was recording as well as his colleagues' personal information. The following day he was arrested for breaking and entering. Shortly afterward, he characterized the event in his blog as his "MetLife Shooting Rampage" and suggested that he might repeat the event at some future date.

On 26 June 2018, Petitioner sought an order prohibiting Respondent from contacting its employees or returning to the workplace and requiring Respondent to turn over a copy of the video he recorded on 14 June 2018, amongst other things. The trial court entered a temporary *ex parte* order granting Petitioner the requested relief

on 27 June 2018. The court entered another order on 3 July 2018, making the provisions of the temporary order permanent, for one year.

On 2 July 2018, Petitioner filed a motion for Respondent to show cause why he should not be held in contempt of the court's 27 June 2018 order based on Respondent's failure to turn over the video. Rather than produce the video, Respondent had provided counsel with a password-protected link that he represented would allow access to the video but refused to provide counsel with the password. Later, he delivered a blank thumb drive to counsel's office that he claimed contained the video but did not. On 12 July 2018, the trial court ordered Respondent to show cause why he should not be held in contempt for his failure comply with the 27 June 2018 order.

Petitioner filed a second motion for Respondent to show cause why he should not be held in contempt on 26 July 2018, this time for failing to comply with the 3 July 2018 order, again for failing to produce the video. Since the filing of the first show cause motion several weeks earlier, Respondent had provided counsel with another thumb drive that he claimed contained the video but this thumb drive was encrypted and password-protected, and Respondent refused to provide the password. On 1 August 2018, the trial court again ordered Respondent to show cause why he should not be held in contempt, and set a second show cause hearing.

On 7 and 10 August 2018, the trial court entered orders continuing the show cause hearings because Respondent's criminal charge for breaking and entering was still pending and Respondent was invoking his Fifth Amendment right against self-incrimination in refusing to produce the video. Petitioner opposed the continuances. The first show cause hearing was continued again on 7 September 2018 despite Petitioner's continued opposition. On 13 September 2018, the trial court entered an order continuing the second show second cause hearing to 25 October 2018 based on an agreement of the parties.[1]

The matter came on for hearing on 25 October 2018 before the Honorable Christine M. Walczyk in Wake County District Court. In an order entered the same day, Judge Walczyk found Respondent in civil contempt of the 3 July 2018 order and ordered him to be taken into custody until he produced the video. Judge Walczyk included an alternative purge provision in her order, allowing Respondent to produce an unencrypted, non-password protected copy of the video *without* audio to purge his contempt. Petitioner took a voluntary dismissal with prejudice of the first show cause hearing on 25 October 2018 and the court entered a dismissal the same day.

Respondent spent almost two weeks in jail in late October and early November of 2018 for his contempt of the 3 July 2018 order before authorizing his counsel on 7

---

[1] On 13 November 2018, Respondent entered a deferred prosecution agreement with the Wake County District Attorney's office, agreeing to plead guilty to the breaking and entering charge.

November 2018 to provide Petitioner with a copy of the video without audio under the alternative purge provision of Judge Walczyk's order.

On 14 January 2019, Petitioner filed a motion to compel the production of the video with the audio included, as had been required by the June and July 2018 orders.[2]  Petitioner re-filed the motion on 12 February 2019.  The matter came on for hearing before the Honorable Ned W. Mangum in Wake County District Court on 14 February 2019.  In an order entered the same day, Judge Mangum granted the motion to compel.

On 19 March 2019, Petitioner once again moved the court for an order to show cause why Respondent should not be held in contempt of the 14 February 2019 order for failing to produce the video with audio.  On 28 March 2019, the trial court once again ordered Respondent to show cause why he should not be held in contempt.  On 17 June 2019, Respondent moved to set aside and dismiss the 14 February 2019 order.

Both matters came on for hearing before the Honorable Margaret P. Eagles in Wake County District Court on 27 June 2019.  Judge Eagles denied Respondent's motion to set aside and dismiss in open court and found Respondent in contempt in a written order entered the same day.  Under Judge Eagles's 27 June 2019 order, Respondent could only purge his contempt by providing a copy of the video with audio

---

[2] As noted above, the provisions of the July 2018 order were in effect through 3 July 2019.

or providing the password that would enable Petitioner to access the password-protected thumb drive he had produced. Respondent was taken into custody at the conclusion of the 27 June 2019 hearing.

Respondent entered written notice of appeal from the 27 June 2019 order on 2 July 2019. The trial court stayed enforcement of the order on 17 July 2019, pending the outcome of the appeal.

On 3 March 2020, Respondent filed a "conditional petition for certiorari," requesting review of the 14 February 2019 order. Petitioner responded in opposition to Respondent's conditional petition on 26 March 2020.

## II. Petition for Certiorari

Respondent petitions our Court for certiorari to review the issue of whether his Fifth Amendment right against self-incrimination was violated by the 14 February 2019 order. Respondent's petition is conditional insofar as we do not consider him to have properly noticed his appeal. We first determine Respondent did not provide notice of appeal and then, in our discretion, deny his petition.

Respondent suggests that he noticed his appeal during the 14 February 2019 hearing on the motion to compel. The following colloquy transpired during that hearing:

> MR. SCHOLTEN: One question, if I may?
>
> THE COURT: Go ahead.

> MR. SCHOLTEN: So let's say you decide to grant the motion, I assume I will have an opportunity to appeal?
>
> THE COURT: I'm not sure that would be interlocutory, meaning you can't appeal it immediately to the Court of Appeals, but I haven't thought through it enough to even be able to answer that question.
>
> MR. SCHOLTEN: Okay, all right.

This question did not constitute notice of appeal from the 14 February 2019 order.

Unlike in a criminal case, in which entry of notice of appeal in open court is allowed under Rule 4(a)(1) of the North Carolina Rules of Appellate Procedure, in a civil case, notice of appeal must be in writing. *See* N.C. R. App. P 3(a) ("Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by *filing* notice of appeal with the clerk of superior court[.]") (emphasis added). Respondent concedes that he did not enter timely written notice of appeal from the 14 February 2019 order.

"Certiorari is a discretionary writ, to be issued only for good or sufficient cause shown, and it is not one to which the moving party is entitled as a matter of right." *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579, 140 S.E. 230, 231 (1927). In our discretion, we deny Respondent's petition for certiorari. We note that Respondent's criminal charge for breaking and entering was resolved several months prior to the February 2019 hearing on the motion to compel and that Respondent had

been granted three continuances out of concern for his Fifth Amendment rights over the course of the six month period preceding the hearing on the motion to compel.

## III. Merits Analysis

Respondent argues that he cannot be held in contempt for violation of an order the trial court lacked the authority to enter. His appeal thus presents the question of whether a trial court exceeds its authority when it enters a no-contact order under the Workplace Violence Prevention Act compelling the production of discoverable material, such as video, and then holds a party in contempt for willfully refusing to produce the material, even in the absence of a pending discovery request. We hold that it does not.

### A. Standard of Review

> Review in civil contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.

*Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 142 (2009) (internal marks and citation omitted). "[H]owever, our standard of review is de novo [] where a party presents a question of statutory interpretation . . . [or] where the trial court's subject matter jurisdiction to hear an issue is questioned[.]" *Smith v. Smith*, 247 N.C. App. 166, 169, 785 S.E.2d 434, 437 (2016) (internal marks and citations omitted).

B. The Workplace Violence Prevention Act

North Carolina's Workplace Violence Prevention Act authorizes "[a]n action for a civil no-contact order . . . by an employer on behalf of an employee who has suffered unlawful conduct from any individual that can reasonably be construed to be carried out, or to have been carried out, at the employee's workplace." N.C. Gen. Stat. § 95-261 (2019). The action may be brought by "filing a verified complaint . . . or by filing a motion in any existing civil action." *Id.* § 95-262(a). "Upon a finding that the employee has suffered unlawful conduct committed by the respondent [to the action], the court may issue a temporary or permanent civil no-contact order." *Id.* § 95-264(a).

North Carolina General Statute § 95-264(b) confers broad authority on trial courts to award appropriate relief in no-contact orders, including the following:

> (1) Order the respondent not to visit, assault, molest, or otherwise interfere with the employer or the employer's employee at the employer's workplace, or otherwise interfere with the employer's operations.
>
> (2) Order the respondent to cease stalking the employer's employee at the employer's workplace.
>
> (3) Order the respondent to cease harassment of the employer or the employer's employee at the employer's workplace.
>
> (4) Order the respondent not to abuse or injure the employer, including the employer's property, or the employer's employee at the employer's workplace.

(5) Order the respondent not to contact by telephone, written communication, or electronic means the employer or the employer's employee at the employer's workplace.

(6) *Order other relief deemed necessary and appropriate by the court.*

*Id.* § 95-264(b) (emphasis added).

In the present case, the trial court's 27 June 2018 no-contact order found that Respondent had committed the requisite unlawful conduct and awarded all five forms of relief N.C. Gen. Stat. § 95-264(b) specifies, as well as the following, other relief:

The Respondent not contact by telephone, written communication, or electronic means any employees of MetLife Group, Inc. ("MetLife").

That Respondent not be on or around the MetLife premises located at 101 MetLife Way in Cary, North Carolina.

That Respondent not come within 200 feet of James Frederick Schenck, Robert Seton Harris, Francine McAllister, and Geoff Lang.

That Respondent not disclose any portion of the video he recorded at MetLife on June 14, 2018.

That Respondent provide to MetLife's counsel in this action a copy of the video he recorded at MetLife on June 14, 2018 within 48 hours of service of this Order.

The 3 July 2018 order also required Respondent to "provide a copy of the video [to counsel] . . . within 10 days of the entry of this Order."

The 14 February 2019 order compelling the production of the video with audio additionally provides:

> the Respondent shall provide a complete copy of all audio and video taken by the [R]espondent on June 14, 2018 at the MetLife campus to Petitioner's counsel within five (5) days of the date of this Order. The copy of [sic] shall not be encrypted, password-protected, or otherwise unavailable to be viewed and heard in full. The Respondent shall use a device that is free of any computer virus to deliver the recording to the [Petitioner].

As noted previously, although Respondent turned over a copy of the video he recorded on 14 June 2018, the video did not include audio.

### C. The Trial Court's Authority to Enter the 14 February 2019 order

Our Supreme Court has held that "[t]he trial court possesses 'inherent authority' to compel discovery in certain instances in the interest of justice." *State v. Warren*, 347 N.C. 309, 325, 492 S.E.2d 609, 617 (1997). Inherent authority has been described as "essential to the existence of the court and the orderly and efficient exercise of the administration of justice." *Beard v. North Carolina State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). It empowers courts to do "those things which are reasonably necessary for the administration of justice within the scope of their jurisdiction[,]" *Matter of Transp. of Juveniles*, 102 N.C. App. 806, 808, 403 S.E.2d 557, 559 (1991) (citation omitted), and it extends to enforcing compliance with court orders, *see generally Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987) ("The power of the trial court to sanction parties for failure to comply with court orders is essential to the prompt and efficient administration of justice."). Civil contempt is, of course, an order entered "to preserve the rights of

private parties and to compel obedience to orders and decrees[.]" *Bishop v. Bishop*, 90 N.C. App. 499, 503, 369 S.E.2d 106, 108 (1988) (citation omitted).

Respondent argues that he cannot be held in contempt of the 14 February 2019 order compelling production of the video with audio because the trial court exceeded its authority when it ordered him to produce the video with audio given that no discovery request or claim for relief remained pending in the case. This argument does not account for the fact that N.C. Gen. Stat. § 95-264(b)(6), allowing for an award of "other relief deemed necessary and appropriate by the court[,]" authorized the trial court to order Respondent to produce the video in the first instance. N.C. Gen. Stat. § 95-264(b)(6) (2019). Further, the provisions of the 3 July 2018 order, including that requiring production of the video to Petitioner's counsel, remained in effect when the subsequent 14 February 2019 order was entered, and Respondent had not complied. Petitioner was thus not required to serve a request for production on Respondent pursuant to Rule 37 of the North Carolina Rules of Civil Procedure prior to moving the court to compel Respondent to produce the video. Nor did Respondent's pre-existing obligation to produce the video excuse him from complying with the court's third order requiring production of the video, which removed any doubt whether it was to be produced "encrypted, password-protected, or otherwise unavailable to be viewed *and heard* in full." (Emphasis added.)

D. The Trial Court's Unchallenged Findings

In the 27 June 2019 order finding Respondent in civil contempt the trial court found in relevant part as follows:

> 4. Contemnor is willfully violating the Court Order by: [Respondent] was ordered to provide a copy of the full video recording he made on June 14, 2018 with any accompanying audio to [Petitioner's] counsel on or before February 14, 2019 (within five days of the entry of the Order). [Respondent] did not and has not provided the video with accompanying audio to [Petitioner's] counsel. [Respondent] was present at the hearing on February 14, 2019, and the Court heard his objections to the Order to produce the video and audio. [Respondent] testified during the Show Cause hearing that he understood that Judge Mangum had ordered him to provide the video with the accompanying audio. On March 4, 2019, [Respondent] sent [Petitioner's] counsel an email, in which he made statements that he had expected to have received a Motion and Order to Show Cause for not complying with Judge Mangum's February 14, 2019 Order, and provided information about how [Petitioner] could serve him. [Respondent's] criminal charge of Misdemeanor Breaking and Entering the Met Life Campus on June 14, 2018 has been resolved through [Respondent's] entry into a deferral agreement on November 13, 2018 in which [Respondent] acknowledged his guilt to the criminal charge and entered a plea of guilty. During the February 14, 2019 hearing, Judge Mangum heard from both parties regarding [Respondent's] concerns regarding potential self-incrimination from the audio recording, and determined that the resolution of the criminal case through entry of a plea of guilty and deferral agreement, negated those concerns. Pursuant to a prior Show Cause Order, [Respondent] has provided a thumb drive, which allegedly had the audio and video vile made by Defendant on June 14, 2018. However, that thumb drive was password protected and [Respondent's] refusal to provide the password resulted in a prior Order for Civil Contempt, entered on October 25, 2018. During this hearing,

> [Respondent] acknowledged that he still knew that password, as did his attorney, but refused to provide it to avoid being held in Civil Contempt.

We are bound by these findings because they are not challenged on appeal. *Tucker*, 197 N.C. App. at 594, 679 S.E.2d at 142-43.

## IV. Conclusion

Informed by the trial court's unchallenged findings above, we hold that the trial court's order compelling the production of the video was not outside the trial court's authority. We therefore affirm the order finding Respondent in civil contempt.

AFFIRMED.

Judges TYSON and HAMPSON concur.