An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-797

Filed 20 August 2025

Durham County, No. 16CVD000111-310

MARINO M. GREEN, Plaintiff,

v.

FELICIA L. BRANCH, Defendant.

Appeal by defendant from order entered 14 May 2024 by Judge Kevin E. Jones in District Court, Durham County. Heard in the Court of Appeals 27 February 2025.

*Marino M. Green, pro se, plaintiff-appellee*

*Felicia L. Branch, pro se, defendant-appellant.*

STROUD, Judge.

Defendant (hereinafter "Wife") appeals from an Order for Civil Contempt ("Contempt Order") finding she "willfully" failed to abide by the terms of a prior judgment regarding equitable distribution of the marital property, which was consented to by the parties ("Consent Order"). The trial court's findings as to Wife's willful failure to comply with the terms of the Consent Order were supported by competent evidence, as was the trial court's determination of Wife's present ability to

comply with the Consent Order. The trial court was not required to consider and offset payments Wife made towards the mortgage during her occupancy of the marital home because this was not required by the Consent Order. We affirm the trial court's Contempt Order.

## I. Background

Wife and Plaintiff ("Husband") were married on 24 May 2003 and separated in December 2015. The parties had three children together during their marriage. In the Consent Order, filed 16 August 2018, the parties "reached a full settlement on the issues of temporary custody, post-separation support, alimony, equitable distribution[,] and attorney's fees[.]" The issue of permanent custody was left open by the Consent Order, allowing the parties "the right to return . . . for a permanent custody hearing if necessary[.]"

Relevant to this appeal, the Consent Order stated that Wife shall "have exclusive use, possession, and ownership of the former marital residence[,] . . . maintain the property, pay any and all debts, including mortgage, taxes, insurance, etc. associated with her occupancy of the residence[,]" and "indemnify and hold [Husband] harmless on her costs for the mortgage, taxes, insurance, and other costs related to her use of the marital residence[.]" The Consent Order also required the parties to: (1) list the former marital property for sale with a mutually agreed upon realtor "[o]n or before" 1 February 2017; (2) indemnify each other "for all liabilities associated with property distribution[;]" and (3) bear their own attorney's fees and

costs associated with the equitable distribution. Though the Consent Order directed the parties to list the marital home in early 2017, the home was not sold until August 2023. Wife continued to reside in the home until it was sold.

Husband filed a Motion to Show Cause on 24 January 2024, and an Amended Motion to Show Cause on 1 February 2024, alleging Wife failed to make various payments associated with the use, maintenance, and eventual sale of the home that occurred on 30 August 2023. Husband also alleged Wife failed to bear the costs of her own attorney's fees.

Husband's Amended Motion was heard on 3 April and 13 May 2024 before Judge Kevin E. Jones in District Court, Durham County. On 14 May 2024, the trial court entered an Order for Civil Contempt. Judge Jones made detailed findings of fact regarding the provisions of the Consent Order and the facts regarding Wife's exclusive use and possession of the marital home since entry of that order, her failure to make mortgage payments and pay other expenses or debts, the sale of the home, and an accounting for proceeds of the sale. The trial court found Wife: "stopped making regular mortgage payments due on the marital home in 2020 due to income decline related to [the] COVID-19 pandemic[;]" failed to make homeowners' association payments; did not indemnify Husband "for all liabilities associated with the distribution" of the marital property; and "did not bear the cost of her attorney's

fees."[1]  The trial court concluded Wife was in civil contempt under North Carolina General Statute Section 5A-21.  *See* N.C. Gen. Stat. § 5A-21 (2023).  Wife was ordered to "purge herself of her civil contempt by paying to [Husband] the sum of $13,232.03 . . . on or before [15 July 2024]" or face imprisonment.  Wife timely filed notice of appeal to this Court on 12 June 2024.

## II.    Analysis

Wife makes two arguments on appeal.  First, Wife argues the trial court erred in concluding she "willfully and without legal justification" violated the Consent Order.  Second, Wife argues the trial court erred in not considering and offsetting some of the funds she paid towards the principal of the mortgage after entry of the Consent Order.  We disagree.

On appeal from contempt proceedings, this Court's review

> is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.

> However, findings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal. The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*.

---

[1] There was a judgment against Wife for $5,625.04 for her attorney's fees; this sum was deducted from the sales proceeds of the marital residence.

*Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 142-43 (2009) (citations, quotation marks, and brackets omitted).

"Civil contempt is designed to coerce compliance with a court order, and a party's ability to satisfy that order is essential." *Watson v. Watson*, 187 N.C. App. 55, 66, 652 S.E.2d 310, 318 (citation omitted). "[C]ivil contempt is based on a willful violation of a lawful court order[ ]" and requires: "(1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Id.* (citations and quotation marks omitted).

Wife does not challenge any of the trial court's findings as unsupported by the evidence, so they are binding on appeal. *See Tucker,* 197 N.C. App. at 594, 679 S.E.2d at 142-43 (citation omitted). The trial court made these relevant findings as to Wife's failure to comply with the Consent Order:

> 11. The Parties did not list the marital home for sale [on or before 1 February 2017] as mandated by the [Consent Order].
>
> 12. [Wife] stopped making regular mortgage payments due on the marital home in 2020 due to income decline related to [the] COVID-19 Pandemic.
>
> 13. [Husband] suffered a substantial credit rating decrease because of [Wife]'s failure to make regular mortgage payments due on the marital home.
>
> 14. [Wife] ultimately filed for bankruptcy because of her income decline.
>
> 15. The marital home was eventually sold in August 2023 for six hundred thirty-five thousand dollars ($635,000.00).

16. Five thousand six hundred nine dollars and four cents ($5,625.04) were deducted from the sales proceeds to pay a judgement (sic) related to [Wife]'s attorney['s] fees.

17. Four thousand two hundred fifty-seven dollars and thirteen cents ($4,257.13) were deducted from the sales proceeds to pay a judgment related to [Wife]'s Pay pal credit card.

18. Three thousand three hundred forty-nine dollars and eighty-six cents ($3,349.86) was deducted from the sales proceeds to pay a judgment related to [Wife]'s failure to pay homeowner association fees related to the marital home.

19. The Parties each received $108,177.69 from the sale of the marital home.

20. [Wife] did not indemnify [Husband] for all liabilities associated with the distribution of the marital property.

21. [Wife] did not bear the cost of her attorney's fees.

22. [Wife] did not agree for [Husband] to be indemnified from her portion of the sales proceeds from the marital home.

23. The [c]ourt finds by a preponderance of the evidence that [Wife] willfully and without legal justification or excuse failed to abide by prior [o]rders of this [c]ourt by failing to indemnify [Husband] for all liabilities associated with the distribution of the marital property and her failure to bear the cost of her attorney['s] fees.

Based on these findings, the trial court concluded Wife "willfully and without legal justification" violated the Consent Order, and that "[Wife] is capable of complying with the terms" of the Consent Order. Wife does not specifically challenge any of these findings made by the trial court, only arguing more generally the trial court "erred" in finding she "willfully and without legal justification" violated the Consent

Order. "[U]nchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Peltzer v. Peltzer*, 222 N.C. App. 784, 787, 732 S.E.2d 357, 360 (2012) (citation omitted).

Wife does not argue the trial court's findings are not supported by competent evidence. Instead, her argument focuses on the definitions of marital and separate property and the treatment of post-separation appreciation on marital property under North Carolina General Statute Section 50-20 (2023). But the order on appeal is not an equitable distribution order, and what a trial court may have done if it were ruling upon an equitable distribution claim in this case is irrelevant.

Specifically, Wife contends the "marital home on the date of separation was [valued at] $371,600[.]" Had the home been listed and sold around the time the Consent Order was entered on 18 August 2016, Wife contends the total profits would have hypothetically been around $100,731.60, leaving each party with about $50,000 after proceeds were split equally. With the home selling in August 2023 for $635,000.00, each party received $108,177.69 after equally splitting the proceeds. Wife argues "[e]ach party separately received double the initial net value of the . . . marital home[,]" and implies this increase in profit should have prevented a finding as to her willful violation of the Consent Order. This argument is without merit. The parties entered into a Consent Order resolving their equitable distribution claim, and the Contempt Order addresses only Wife's lack of compliance with the Consent Order. No matter what date the home was sold and at what value, it does not negate the

findings of fact made by the trial court that Wife failed to make payments to the mortgage and homeowner's association during her occupancy of the home, failed to pay her attorneys, failed to pay her credit card debt, and failed to indemnify Husband of all costs associated with the marital residence or debts allocated to her. Her failure to pay these costs resulted in liens and judgments reducing the final sales proceeds of the home, ultimately reducing the value Husband was due upon sale of the marital residence. Wife's argument as to the trial court's conclusion of willful violation of the Consent Order is overruled.

Wife next argues the trial court erred in not considering that some "proceeds from the sale of the . . . marital home were [her] funds paid" after entry of the Consent Order. Again, Wife makes an argument based upon how a court would treat the reduction in principal owed on a mortgage by post-separation mortgage payments by a spouse using her separate funds. The only case Wife has cited in support of her argument is *Crowell v. Crowell*, which held that under North Carolina General Statute Section 50-20, the trial court's equitable distribution order was in error because it ordered the plaintiff to "liquidate her separate property to pay a distributive award." 372 N.C. 362, 368, 831 S.E.2d 248, 252 (2019). *Crowell* is not applicable to this case, because the order on appeal is not an equitable distribution order. Wife has not demonstrated that the trial court's order fails to correctly reflect the terms of the Consent Order.

For Wife to have her ideal outcome of the trial court offsetting some portion of

payments she made on the mortgage during her occupancy, this offset would have to have been supported by the terms of the Consent Order's provisions. "A consent judgment incorporates the bargained agreement of the parties[,]" *Stevenson v. Stevenson*, 100 N.C. App. 750, 752, 398 S.E.2d 334, 336 (1990) (citation omitted), and "is enforceable through the [trial] court's contempt powers[,]" *Walters v. Walters*, 307 N.C. 381, 385, 298 S.E.2d 338, 341 (1983). As explained by this Court in *Buckingham v. Buckingham*,

> if a consent agreement is presented to the court by the parties who express their consent, is approved by the court and filed with the clerk of court, the agreement is a final judgment pursuant to Rule 58 of the North Carolina Rules of Civil Procedure.
>
> . . . .
>
> A consent judgment is not only a judgment of the court but is also a contract between the parties and it cannot be amended without showing fraud or mutual mistake, which showing must be by a separate action, or by showing the judgment as signed was not consented to by a party, which showing may be by motion in the cause.

134 N.C. App. 82, 87-88, 516 S.E.2d 869, 874 (1999) (citation, quotation marks, and brackets omitted). The Consent Order is binding on the parties and the Contempt Order simply enforces the terms of the Consent Order.

The Consent Order states that Wife "shall have exclusive use, possession, and ownership of the former marital residence; she shall maintain the property, pay any and all debts, including the mortgage, taxes, insurance, etc. associated with her

occupancy of the residence." The Consent Order also directed Wife to "indemnify and hold [Husband] harmless on her costs for the mortgage, taxes, insurance, and other costs related to her use of the marital residence." After sale of the marital residence, the "net sales proceeds . . . shall be divided equally between the parties." The Order also provided that "[o]n or before 1 February 2017, the former marital residence shall be listed for sale with a mutually selected realtor[,]" and provided that the parties would follow the realtor's recommendations as to any needed repairs and the "agreed-upon costs" would be "shared equally between the parties." The Consent Order did not address any change in the division of the sales proceeds if the sale did not occur within a particular time. Nor does Wife contend that Husband prevented her from selling the marital residence sooner.

Under the clear terms of the Consent Order, the trial court did not err in failing to consider payments made towards the principal of the mortgage by Wife during her residency of the home. The Consent Order is unambiguous and explicitly requires Wife to make all payments associated with her occupancy of the home until the home was sold and to indemnify Husband for these costs, no matter how long she maintained occupancy. Wife's argument the trial court should have considered and offset payments she made on principal of the mortgage beyond early 2017 is overruled.

## III.    Conclusion

The trial court did not err in concluding Wife willfully failed to comply with the

terms of the Consent Order and holding her in civil contempt. The trial court's Contempt Order correctly enforced the terms of the Consent Order.

AFFIRMED.

Judges GRIFFIN and FLOOD concur.

Report per Rule 30(e).